John J. Nelson (SBN 317598)
MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC
280 South Beverly Drive
Beverly Hills, California 90212
Tel.:    (858) 209-6941
jnelson@milberg.com

*Attorney for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA QUAMINA, KSENIYA GODUN, MOYA MCDOWELL, RENEE PETTIT, KRISTIE NELSON, TASHA DAVIS AND LATOYA FOUST, Individually and on behalf of all others similarly situated | CASE NO. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| -VS.- | |
| JustAnswer LLC | **Jury Trial Demanded** |
| Defendant. | |

## I.    INTRODUCTION

1.    JustAnswer LLC ("JustAnswer") or ("Defendant") operates a website, www.justanswer.com, on which users can ask "experts" to answer on a wide variety of topics, including, among others, medical, legal, tax, veterinary, computer, and electrical.

2.    Users can access the JustAnswer website on a standard computer, such as a desktop or laptop, or a mobile device.

1

3.      When a user first accesses the JustAnswer website, they are informed they can "[t]alk to doctors, lawyers, vets, [and] more in minutes" and are presented with a box where they can type a question.

4.      However, JustAnswer also solicits clients through on-line sites such as: pissedconsumers.com or gethuman.com[1].

5.      There are a variety of links displayed on these sites that will take the user to the JustAnswer website.

6.      The JustAnswer website displayed after pressing these links can be confusing to the user as the website will display Just answer Playstation Support, Just answer Groupon Support, Just answer Microsoft Support… etc.

7.      Some Plaintiffs and class members actually believe they are speaking with those companies' customer support departments.

**JustAnswer Prior to California Settlement Agreement**

8.      On January 31, 2020, Tina Sellers ("Sellers") and Erin O'Grady ("O'Grady") (collectively, "Plaintiffs") filed a complaint in the Superior Court of the State of California, County of San Diego, entitled *Sellers, et al. v. JustAnswer LLC*, Case No. 37-2020-00005869-CU-BT-CTL (the "Action"). (ROA #1.)

9.      Tina Sellers and Erin O'Grady (together, Plaintiffs) used the JustAnswer website to submit a single question to an "expert" for what they believed would be a one-time fee of $5, and JustAnswer automatically enrolled them in a costlier monthly membership.

---

[1] Upon information and belief, these websites are set up to assist users in getting customer support assistance from companies such as Groupon, Microsoft or Playstation.

10.     After discovering additional charges to their credit cards, Plaintiffs filed a class action lawsuit against JustAnswer, alleging it routinely enrolled online consumers like them in automatic renewal membership programs without providing "clear and conspicuous" disclosures and obtaining their "affirmative consent" as mandated by the Automatic Renewal Law (Bus. & Prof. Code,1 § 17600 et seq.; the ARL).  (§ 17602, subds. (a)(1) and (a)(2).

11.     JustAnswer claimed Plaintiffs agreed to their "Terms of Service," which included a class action waiver and a binding arbitration clause, when they entered their payment information on the website and clicked a button that read, "Start my trial."

12.      The following textual notice appeared in very small print further down the page below the "Start my trial" button:

13.     "By clicking 'Start my trial' you indicate that you agree to the terms of service and are 13+ years old."

14.     The underlined "terms of service" was a hyperlink to a separate webpage that displayed the 26-page-long terms of service.

15.     If a user accesses the JustAnswer website on a desktop or laptop computer, the payment page looks like this:





16.    If a user accesses the website on a mobile device, the following is what the payment page looks like:



17.    Both the "Terms of Service" and "Privacy Policy" are hyperlinks to separate pages containing the respective terms, including a binding arbitration clause and class action waiver, and privacy policy.

18.    As with the computer version, the user is not required to actually view the hyperlinked terms of service in order to click "Start my trial" and begin using JustAnswer's service.

19.    In addition, users on mobile devices are directed to the following screen once the response to their initial question is ready:



20.     The screen includes another large orange button that reads "View response," and below that is a checkbox followed by the statement, in smaller white font, "I agree to the Disclaimer and re-agree to the Terms of Service."

21.     The underlined text "Disclaimer and re-agree to the Terms of Service" is a hyperlink that leads the user to another page with a series of disclaimers, but not to the terms of service containing the arbitration clause.

22.     Rather, the hyperlinked page contains two separate sets of disclaimers and, after each, states, "You can read more about these policies in our Terms of Service."

23.     The words "Terms of Service" appear in blue font and are hyperlinks to the same terms of service page linked on the payment screens.

24.      Here, the user must check the box next to the statement in order to view the response to their question.

25. However, the user does not need to actually click on and view the hyperlinked pages containing either the disclaimers or the terms of service in order to check the box or to continue using JustAnswer's service.

26. The Action alleges that, in connection with membership subscription offers made to California consumers, Defendant violated provisions of California consumer-protection law, including the Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.)("CLRA"), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

27. The Parties entered into a Settlement Agreement dated March 24, 2022.  (See copy of Settlement Agreement attached hereto as Exhibit "1").

28. As part of the Settlement Agreement, within 60 days after its effective fate, and for a period of at least two years thereafter, Defendant will make any changes to its membership offer materials and practices necessary to substantially comply with California Business and Professions Code §§ 17600-17606.  (See Exhibit "1"; page 6).

**JustAnswer Post California Settlement Agreement**

29. Upon information and belief, JustAnswer amended its Terms of Service effective February 26, 2022.

30. However, there is still no mention of cost on the JustAnswer site, but, if the user enters a question in the box and clicks "Continue," they are taken to a payment page.

31. Once taken to the payment page, customers pay anywhere between $1 to $5 to have their questions answered.

32. However, just as it was before the California Settlement, JustAnswer enrolls these customers in costlier membership.





33.     As an example and as shown in the image above, the page states, in fairly large white print against a dark background, "Chat with Groupon techs to fix your tech issue now."

34.     Above that, it states "just answer Software."

35.     Below, in smaller print, it says: "Unlimited conversations one-time $1 join fee and $46/month.  Cancel anytime."

36.     Below that, there is a white box with fields for the user to enter their credit card information and an email address.

37.     Below those fields, is much smaller checked-off blue box and smaller print containing hyperlinks to Terms of Service, Privacy Policy and language regarding automatic renewal.

38.     The user is not required to check-off the box as the box has already been checked automatically.

39.     Then there is a large orange button that says, "Connect now."

40.      The underlined "terms of service" is a hyperlink that takes the user to another webpage with approximately 34 pages of terms, including, among others, a binding arbitration clause, a class action waiver, and a disclaimer that JustAnswer does not "guarantee any particular level of expertise" from their experts.

41.     Again, the user is not required to actually view the hyperlinked terms of service in order to begin using JustAnswer's service.

42.     Even if consumers  were to click on the hyperlinked terms and conditions, they would be unlikely to see that Defendant's term memberships automatically renews for "time periods (e.g, monthly, annually) set forth at the time of sign up."

43.     Defendant buried this information in dense text and is not clear and conspicuous disclosures as required by law.

44.     Upon information and belief, the "$46/month" are believed to be what Defendant is referring to when it discussed the "terms of membership" that automatically renewed.

45.     The Defendant goes out of its way to avoid saying that "By clicking this box, you are agreeing to pay a membership fee of $46.00 per month."

46.     Instead, once a user submits their payment information and clicks on the "Connect now" button, they are automatically enrolled in a recurring monthly membership.

47.     Plaintiffs and class members believed they were paying anywhere between $1 to $5 to have their questions answered.

48.     Instead, a user could be paying in some cases over $60.00 to have one question answered and then paying $60.00 every month thereafter whether or not they ask another question.

49.     Other Plaintiffs and class members actually believed they were speaking with those companies' customer support departments.

50.     Consumers have been injured by Defendant's practice of renewing consumers' subscriptions without their consent and knowledge and making it difficult for consumers to cancel their subscriptions.

51.     The website Reseller Ratings[2] provides some examples that chronicle their common grievances. Customer Reviews give Defendant 1.00 out of 5 stars with numerous billing complaints such as the following:

---

[2] https://www.resellerratings.com/store/JustAnswer.

★☆☆☆☆ **1/5**                                    2022-10-07

## Not worth it!!

"They billed me 66 for a montly subscription that i had no idea about. I ended up solving my problem on my own. I expected to pay $2 not $66 on top pf that. What a rip off!! I called and they refused to give me a refund. So mad"

★☆☆☆☆ **1/5**                                    2022-09-12

## scam

"answers generic, just use google. They will try to charge you each month and won't refund money."

★☆☆☆☆ **1/5**                                    2022-09-07

## SCAM!

"Their website makes it look like you can sign up for a $5 trial but when I used Paypal to pay for it, I was charged $65...$5 to sign up (SCAM) and $60 for the first month of membership (SCAM). I immediately tried to contact them via phone multiple times, email, and again on the website (where the "chat" person wouldn't allow me to ask any further questions). They sent me an email saying my membership was canceled and no "additional" funds would be withdrawn from my account. This is a shady outfit indeed!"

## I'd rate a negative star if I could

"I had a question about something and JustAnswer popped up with a message that offered help for $5. I thought that was reasonable, so I put in my information. Then I get the invoice that shows I signed up for a membership at $55 per month and see that my credit card has a $55 pending charge for JustAnswer in addition to the $5 I thought I was being charged. I called them immediately (same day) and was told that I'd agreed to a membership, which I did not realize I'd agreed to (small print). I cancelled the membership and was told that I would not be charged the $55. The charge just posted to my credit card so I called again and was told that my money would not be refunded, as I'd agreed to a membership. I am not happy with JustAnswer."

★☆☆☆☆ **1/5**                                                  2022-08-28

## Don't ever consider them

"Needed some help with email account and somehow directed here on line. Did not help, then set up a recurrent charge to my credit card! Total scam. Criminal."

★ ☆ ☆ ☆ ☆ 1/5                                                    2022-08-20

## Said costs $5 Charged $5 AND THEN $60

"RIP OFF. I asked how much it would cost - I was told JUST $5 I just now received an alert from my Credit Card I was charged a second charge for $60. Why wasn't I told I would charged and additional $60? I would NOT have continued with process. on top of it. I told my ENTIRE issue with first person. They connected me to second person (Lawyer) but did not share the info so I had to start ALL OVER again (Lawyer said they are ALL independent contractors and don't share info). AWFUL experience. Wish I read all the reviews FIRST - SAME COMPLAINT everywhere."

★ ☆ ☆ ☆ ☆ 1/5                                                    2022-08-24

## Horrendous Experience- You need a lawyer to navigate their charges, 1.00 24.00 55.00 WTF??

"This was the worst online experience of all time. I went on looking for an answer on microwave repair (wrong site for this!) It said I had to pay 1.00 and would be refunded. I was then offered to talk to someone for 24.00 so I paid for that. When the person who was going to help me told me he only texts (I don't have time for that) I said I wanted my money back. I was credited back the 24.00 but see a charge for 55.00 (MONTHLY MEMBERSHIP) I never consented to a monthly 55.00 membership. This is egregious! I've never had a company do something like this before? I will be calling my CC company to suspend payment as it was unauthorized."

## II.    PARTIES

52.    Jessica Quamina is a resident of Long Beach, California.

53.    Kseniya Godun is a resident of California.

54.    Plaintiff Moya McDowell is a resident of Poughkeepsie, New York.

13

55.     Plaintiff Renee Pettit is a resident of Auburndale, Florida.

56.     Plaintiff Kristie Nelson is a resident of Hollywood, Florida.

57.     Plaintiff Tasha Davis is a resident of Greensboro, North Carolina.

58.     Plaintiff Latoya Foust is a resident North Carolina.

59.     Plaintiffs are informed and believe and thereon allege that JustAnswer is a limited liability company organized under the laws of Idaho and has its principal place of business in San Francisco, California. JustAnswer does business in San Diego County, including the marketing and sale of services that include the membership programs described herein.

### III.     INDIVIDUAL PLAINTIFFS' ALLEGATIONS

**J̲E̲S̲S̲I̲C̲A̲ ̲Q̲U̲A̲M̲I̲N̲A̲ ̲(̲C̲A̲L̲I̲F̲O̲R̲N̲I̲A̲ ̲P̲L̲A̲I̲N̲T̲I̲F̲F̲)̲**

60.     In or about July or August 2021, Jessica decided to ask a legal question on the JustAnswer website.

61.     Prior to submitting her question, Jessica was required to provide her payment information through the website's payment page.

62.     She paid Defendant a deposit and then Jessica paid additional money to the attorney to provide her with additional information on a landlord tenant matter.

63.     Jessica had used JustAnswer in the past and had been charged a recurring fee, but she thought that she may have pressed a button or checked a box by mistake to incur these recurring charges.

64.     However, this time she was very careful to make sure she did not press any buttons or check any boxes that would subject her to any recurring charges.

65.     Despite making sure that she did not knowingly agree to a monthly subscription fee, approximately 45-days after she paid Defendant and the attorney for their services, she was

shocked to discover that Defendant was charging her an ongoing monthly fee of approximately $60 per month.

66.     Had Jessica known that Defendant was going to enroll her in an automatically renewing membership program without her knowledge and consent, she would not have submitted her debit card information to Defendant and would not have paid any money to JustAnswer.

**KSENIYA GODUN (CALIFORNIA PLAINTIFF)**

67.     In or about May 2022, Kseniya decided to ask a legal question regarding a lease agreement on the JustAnswer website.

68.     Prior to submitting her question, Kseniya was required to provide her payment information through the website's payment page.

69.     Kseniya believed that she would be charged a one-time fee of $1.00 to have her question answered.

70.     Kseniya was not satisfied with the answer that she received from the Defendant's representative.

71.     She then discovered that in addition to the $1.00 charge, JustAnswer had also charged her an additional fee of $46.00.

72.     She now has two (2) separate charges on her account of $1.00 and $46.00.

73.     She immediately tried to contact JustAnswer for a refund.

74.     The JustAnswer app advised her that she would have to call the Defendant to get a refund.

75.     Kseniya called the Defendant and spoke to a JustAnswer representative who refused to refund her the $46.00.

76.    Had Kseniya known that Defendant was going to charge her $46.00 and enroll her in an automatically renewing membership program without her knowledge and consent, she would not have submitted her account information to Defendant and would not have paid any money to JustAnswer.

**MOYA MCDOWELL (NEW YORK PLAINTIFF)**

77.    In or about August 2022, Moya decided to ask a legal question on the JustAnswer website.

78.    Prior to submitting her question, Moya was required to create an account which included providing her payment information through the website's payment page.

79.    Moya believed that she would be charged a one-time fee of $5.00 to have her question answered.

80.    Moya was not satisfied with the answer and she sought other legal counsel.

81.    Moya then discovered that JustAnswer charged her a $46.00 membership additional charge.

82.    Moya thought that it was free to join JustAnswer and was shocked when she discovered the $46.00 charge.

83.    She also discovered that JustAnswer was going to charge her $46.00 per month.

84.    Moya immediately canceled her JustAnswer subscription.

85.    If Moya had known that Defendant was going to charge her $46.00 enroll her in an automatically renewing membership program, she would not have submitted her debit card information to Defendant and would not have paid any money to JustAnswer.

**RENEE PETTIT (FLORIDA PLAINTIFF)**

86.     In or about September 2022, Renee decided to ask a question on the JustAnswer website for her mother-in-law who was having some minor mechanical issues with her vehicle.

87.     Prior to submitting her question, Renee was required to create an account which included providing her payment information through the website's payment page.

88.     Renee believed that she would be charged a one-time fee of $1.00 to have her question answered by an expert.

89.     Renee then discovered that JustAnswer had charged her account an additional fee of $34.00.

90.     Thus, she now has two (2) separate charges on her account of $1.00 and $34.00.

91.     Renee thought that it was going to be $1.00 to get her questioned answered.

92.     Renee immediately canceled her JustAnswer subscription.

93.     However, JustAnswer refused to refund her the $34.00.

94.     If she had known that Defendant was going to charge her $34.00 and enroll her in an automatically renewing membership program, she would not have submitted her account information to Defendant and would not have paid any money to JustAnswer.

**KRISTIE NELSON (FLORIDA PLAINTIFF)**

95.     In or about December 2020, Kristie decided to ask a question on the JustAnswer website.  Prior to submitting her question, Kristie was required to create an account which included providing her payment information through the website's payment page.

96.     Kristie believed that she would be charged a one-time fee of to have her question answered by an expert.

97.    She then discovered that JustAnswer had charged her an additional membership charge.

98.    Kristie thought that it was free to join JustAnswer and was shocked when she discovered the membership charge.

99.    She also discovered that JustAnswer was going to charge her a monthly fee.

100.    Kristie immediately canceled her JustAnswer subscription.

101.    If Kristie had known that Defendant was going to enroll her in an automatically renewing membership program, she would not have submitted her debit card information to Defendant and would not have paid any money to JustAnswer.

**TASHA DAVIS (NORTH CAROLINA PLAINTIFF)**

102.    In or about 2019, Tasha decided to ask a legal question on the JustAnswer website.

103.    Prior to submitting her question, Tasha was required to provide her payment information through the website's payment page.

104.    She paid Defendant to have an employment questioned answered.

105.    Tasha believed that she would be charged a one-time fee to have her question answered by an expert.

106.    She then discovered that JustAnswer was charging her a recurring monthly subscription fee.

107.    Tasha then called Defendant approximately 3-times to try to get Defendant to stop taking funds out of her bank account.

108.    Defendant told her it would take approximately 30-days to stop the recurring monthly fees from being deducted from her bank account.

109.    However, even after the 30-days had passed, Defendant continued to withdraw funds from Tasha's account.

110.    Tasha ended up having to close this account.

111.    If Tasha had known that Defendant was going to enroll her in an automatically renewing membership program, she would not have submitted her debit card information to Defendant and would not have paid any money to JustAnswer.

**LATOYA FOUST (NORTH CAROLINA PLAINTIFF)**

112.    In or about September 2022, Latoya decided to ask a legal question on the JustAnswer website.

113.    Prior to submitting her question, Latoya was required to provide her payment information through the website's payment page.

114.    She thought she had to pay $5.00 to the Defendant to have her landlord/tenant questioned answered.

115.    The next morning Latoya checked her bank account and immediately noticed that Defendant had charged her an additional $46.00.

116.    She felt that she had been deceived by the Defendant.

117.    Latoya then called the Defendant and was told she had enrolled in Defendant's monthly membership program.

118.    However, she only wanted to ask one question so she spent an hour on the phone with a representative of the Defendant pleading her case to have the charge refunded.

119.    Latoya finally received a refund.

120.    If Latoya had known that Defendant was going to enroll her in an automatically renewing membership program, she would not have submitted her debit card information to Defendant and would not have paid any money to the Defendant.

IV.     SUMMARY OF APPLICABLE LAW

121.    The Federal Trade Commission (FTC) Act's Section 5 is the primary federal statute that governs the use of ARL provisions. The FTC's guidance on negative option features advises businesses to adhere to five fundamental principles for compliance.  (See Negative Options – A Report by the staff of the FTC's Division of Enforcement attached hereto as Exhibit "2"). The five principles are as follows:

> **Principle 1**. Disclose material terms, including existence, total cost, third-party billing terms, and how to cancel payment (See *Id*. at p.8);
>
> **Principle 2**. Make disclosures visible by placing them in prominent locations (See *Id*. at p.7);
>
> **Principle 3**. Disclose material terms of the offer to consumers before payment (See *Id*.);
>
> **Principle 4**. Obtain consumers' affirmative consent to the offer rather than relying on a pre-checked box (See Exhibit "2" at p.7); and
>
> **Principle 5**. Avoid impeding the effective operation of promised cancellation procedures (See *Id.*).

**California Automatic Renewal Law**

122.    This course of conduct violates the California Automatic Renewal Law (Bus. & Prof. Code, § 17600 et seq.) ("ARL"), which is part of California's False Advertising Law; the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) ("CLRA"); and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.) ("UCL").

123.    In 2009, the California Legislature passed Senate Bill 340, which took effect on December 1, 2010 as Article 9 of Chapter 1 of the False Advertising Law. (Bus. & Prof. Code, § 17600 *et seq.* (the California Automatic Renewal Law or "ARL")). (Unless otherwise stated, all statutory references are to the Business & Professions Code). SB 340 was introduced because:

> It has become increasingly common for consumers to complain about unwanted charges on their credit cards for products or services that the consumer did not explicitly request or know they were agreeing to. Consumers report they believed they were making a

> one-time purchase of a product, only to receive continued shipments of the product and charges on their credit card. These unforeseen charges are often the result of agreements enumerated in the "fine print" on an order or advertisement that the consumer responded to. (See Exhibit 2 at p. 4.)

124.   The Assembly Committee on Judiciary provided the following background for the legislation:

> This non-controversial bill, which received a unanimous vote on the Senate floor, seeks to protect consumers from unwittingly consenting to "automatic renewals" of subscription orders or other "continuous service" offers. According to the author and supporters, consumers are often charged for renewal purchases without their consent or knowledge. For example, consumers sometimes find that a magazine subscription renewal appears on a credit card statement even though they never agreed to a renewal. (See Exhibit 2 at p. 8.)

125.   The ARL seeks to ensure that, before there can be a legally-binding automatic renewal or continuous service arrangement, there must first be clear and conspicuous disclosure of certain terms and conditions and affirmative consent by the consumer. To that end, § 17602(a) makes it unlawful for any business making an automatic renewal offer or a continuous service offer to a consumer in California to do any of the following:

a.   Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. For this purpose, "clear and conspicuous" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." (§ 17601(c).) "In the case of an audio disclosure, 'clear and conspicuous' … means in a volume and cadence sufficient to

be readily audible and understandable." (Ibid.) The statute defines "automatic renewal offer terms" to mean the "clear and conspicuous" disclosure of the following: (1) that the subscription or purchasing agreement will continue until the consumer cancels; (2) the description of the cancellation policy that applies to the offer; (3) the recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known; (4) the length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer; and (5) the minimum purchase obligation, if any. (Bus. & Prof. Code § 17601(b).)

b.  Charge the consumer's credit or debit card or the consumer's account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time. (Bus. & Prof. Code § 17602(a)(2).)

c.  Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. (Bus. & Prof. Code, § 17602(a)(3).) Section 17602(b) requires that the acknowledgment specified in § 17602(a)(3) include a toll-free telephone number, electronic mail

address, or another "cost-effective, timely, and easy-to-use" mechanism for cancellation.

126.    If a business sends any goods, wares, merchandise, or products to a consumer under a purported automatic renewal or continuous service arrangement without first obtaining the consumer's affirmative consent to an agreement containing the "clear and conspicuous" disclosures as specified in the ARL, the goods, wares, merchandise, and/or products are deemed to be an unconditional gift to the consumer, who may use or dispose of them without any obligation whatsoever. (Bus. & Prof. Code, § 17603.) Violation of the ARL gives rise to restitution and injunctive relief under the general remedies provision of the False Advertising Law, Bus. & Prof., Code § 17535. (Bus. & Prof. Code, § 17604(a).) As well, violation of the ARL gives rise to restitution and injunctive relief under the UCL.

**North Carolina Automatic Renewal Law**

127.    Pursuant to N.C.G.S. § 75-41 (the Auto Renewal Statute or "ARS"): any person engaged in commerce that sells, leases, or offers to sell or lease, any products or services to a consumer pursuant to a contract, where the contract automatically renews unless the consumer cancels the contract, shall do all of the following: (1) Disclose the automatic renewal clause clearly and conspicuously in the contract or contract offer; (2) Disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services; (3) For any automatic renewal exceeding 60 days, provide written notice to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date; and (4) If the terms of the contract

will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print.

128.    Defendant systematically violates the ARS by: failing to present the automatic renewal offer terms in a clear and conspicuous manner in the contract offer in violation of N.C.G.S. § 75-41(1), and failing to disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services, in direct violation of N.C.G.S. § 75-41(2), and filing to provide written notice for any automatic renewal exceeding 60 days, to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date in violation of N.C.G.S. § 75-41(3).

### New York Deceptive Trade Practices & Automatic Renewal Law

129.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW §349.

130.    In addition, on February 9, 2021, the New York State Legislature enacted its automatic renewal law, SB 1475.

131.    Similar to the California ARL, the New York ARL covers both automatic renewal (defined as "a plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term") and continuous service (defined as "a plan or arrangement in which a subscription or purchasing agreement continues until

the consumer cancels the service"). The key provisions of the New York ARL are summarized below:

- Seller must present the offer terms in a clear and conspicuous manner *before* the subscription or purchasing contract is fulfilled and in visual or temporal proximity to the offer acceptance request. The offer terms must include the following clear and conspicuous disclosures: (1) that the subscription or purchasing contract will continue until the consumer cancels; (2) the description of the cancellation policy; (3) the recurring amount that will be charged, and that the amount of the charge may change, if applicable, and the amount to which the charge will change, if known; (4) the length of the automatic renewal or continuity term, unless the term is chosen by the consumer; and (5) the minimum purchase obligations, if any;
- Seller must obtain *affirmative* consent to the offer terms before charging the consumer's credit/debit card or account with a third party.
- Seller must provide the consumer with an acknowledgment in a manner that can be retained by the consumer, which acknowledgment must include (1) the offer terms, (2) the cancellation policy and (3) information on how to cancel. If the offer includes a free trial, the acknowledgment must include information on how to cancel and allow the consumer to cancel before the consumer pays for the good or services.
- Seller must provide a toll-free telephone number, an email address, a postal address if the seller directly bills the consumer, or another cost-effective, timely and easy-to-use cancellation method.
- Seller must provide the consumer with a clear and conspicuous notice of any material change in the terms of the offer and provide information on how to cancel in a manner that is capable of being retained by the consumer, *prior to* implementation of the material change.
- If seller sends any goods or products to a consumer under an automatic renewal or continuous service agreement without first obtaining the consumer's consent, such goods or products will be deemed an unconditional gift to the consumer.

132.    Defendant has violated N.Y. GEN. BUS. LAW §349 statute by, inter alia:

a.    Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.    Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

c.   Omitting material information in order to prevent customers from cancelling theirtrial before the last day of the trial period;

d.   Failing to provide customers with an "agreement" or "terms of service" adequately disclosing all material terms and cancellation instructions before locking them into a subscription plan; and

e.    Curtailing customers' ability to easily cancel their subscription to JustAnswer prior to the expiry of the trial period.

**Florida Deceptive Trade Practices & Automated Renewal Laws**

133.    Pursuant to FL ARL, online retailers who offer automatically renewing subscriptions to Florida consumers must:

(i)    disclose the automatic renewal provision clearly and conspicuously in the contract or contract offer; and

(ii)    A seller that sells or offers to sell any service to a consumer pursuant to a service contract the term of which is a specified period of 12 months or more and that automatically renews for a specified period of more than 1 month, unless the consumer cancels the contract, shall provide the consumer with written or electronic notification of the automatic renewal provision. Notification shall be provided to the consumer no less than 30 days or no more than 60 days before the cancellation deadline pursuant to the automatic renewal provision. Such notification shall disclose clearly and conspicuously:

a.   That unless the consumer cancels the contract the contract will automatically renew; and

b.  Methods by which the consumer may obtain details of the automatic renewal provision and cancellation procedure, whether by contacting the seller at a specified telephone number or address, by referring to the contract, or by any other method.

134.  Defendant has Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq. ("FDUTPA") by:

a.  Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.  Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

c.  Omitting material information in order to prevent customers from cancelling their trial before the last day of the trial period;

d.  Failing to provide customers with an "agreement" or "terms of service" adequately disclosing all material terms and cancellation instructions before locking them into a subscription plan; and

e.  Curtailing customers' ability to easily cancel their subscription to JustAnswer prior to the expiry of the trial period.

## V. CLASS ALLEGATIONS

135.  As alleged throughout this Complaint, the Class' claims all derive directly from a single course of conduct by Defendant.  Defendant has engaged in uniform and standardized conduct toward the Class—its marketing and billing tactics—and this case is about the responsibility of Defendant, at law and in equity, for its knowledge and conduct in deceiving its customers.  This conduct did not meaningfully differentiate among individual Class members in

its degree of care or candor, its actions or inactions, or in the content of its statements or omissions. The objective facts on these subjects are the same for all Class members.

136.    Plaintiffs sue on their own behalf and on behalf of a Class for damages and injunctive relief under Rules 23(a), (b)(2), (b)(3), and (c)(4) of the Federal Rules of Civil Procedure.

137.    The Class, preliminarily defined as two subclasses ("Subclasses"), is as follows:

a.    The Multistate Class, preliminarily defined as all JustAnswer customers in the United States who were automatically enrolled into and charged for at least one month of JustAnswer membership by Defendant at any time from [applicable statute of limitations period] to the date of judgment.

b.    The State Classes, preliminarily defined as all JustAnswer customers in the state of [e.g., New York, North Carolina and California, etc.] (including customers of companies JustAnswer acts as a successor to) who were automatically enrolled into and charged for at least one month of JustAnswer membership by Defendant at any time from [applicable statute of limitations period] to the date of judgment.

138.    Excluded from the class are the following individuals: officers and directors of Defendant and its parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

139.    Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

140.    <u>Numerosity.</u> The members of the class are so numerous that a joinder of all members is impracticable.  While the exact number of class members is unknown to Plaintiffs at this time, Plaintiffs believe the class numbers in the tens of thousands, if not more.

141.    <u>Typicality.</u> Plaintiffs' claims are typical of the claims of the class members because, among other things, Plaintiffs sustained similar injuries to that of class members as a result of Defendant's uniform wrongful conduct, and their legal claims all arise from the same events and wrongful conduct by Defendant.

142.    <u>Adequacy.</u>  Plaintiffs will fairly and adequately protect the interests of the class members. Plaintiffs' interests do not conflict with the interests of the class members and Plaintiffs have retained counsel experienced in complex class action cases to prosecute this case on behalf of the class.

143.    <u>Commonality.</u> Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual members of the class, including the following:

a.    Whether Defendant's conduct constitutes unfair, unlawful and/or fraudulent practices prohibited by the laws of California, North Carolina and/or New York;

b.    Whether Defendant was unjustly enriched as a result of its conduct;

c.    Whether Class Members have been injured by Defendant's conduct;

d.    Whether any or all applicable limitations periods are tolled by Defendant's acts;

e.    Whether, and to what extent, equitable relief should be imposed on Defendant to prevent it from continuing its unlawful practices; and

f.    The extent of class-wide injury and the measure of damages for those injuries.

144.    <u>Ascertainability</u>.  Class members can easily be identified by an examination and analysis of the business records maintained by Defendant, among other records within Defendant's possession, custody, or control.

145.    <u>Predominance</u>. The common issues of law and fact identified above predominate over any other questions affecting only individual members of the class.  The class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's conduct.

146.    <u>Superiority</u>. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since a joinder of all members is impracticable. Furthermore, as damages suffered by class members may be relatively small, the expense and burden of individual litigation make it impossible for class members to individually redress the wrongs done to them. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and expense presented by the complex legal and factual issues of the case to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

147.    Accordingly, this class action is properly brought and should be maintained as a class action because questions of law or fact common to class members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

148.    This class action is also properly brought and should be maintained as a class action because Plaintiffs seek injunctive relief and declaratory relief on behalf of the class members on grounds generally applicable to the proposed class.

149.    Certification is appropriate because Defendant has acted or refused to act in a manner that applies generally to the proposed class, making final declaratory or injunctive relief appropriate.

**FIRST CAUSE OF ACTION**
**Violation of the Electronic Funds Transfer Act**
**15 U.S.C. 1693, et seq.**
**(On behalf of Plaintiff and Nationwide EFTA Subclass)**

150.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

151.    Plaintiffs seek to recover for JustAnswer's violations of the Electronic Funds Transfer Act on behalf of herself and the Nationwide EFTA Subclass.

152.    The EFTA provides a basic framework establishing the rights, liabilities, and responsibilities of participants in an electronic fund transfer system. 15 U.S.C. §§ 1693 et seq. The "primary objective" of the EFTA "is the provision of individual consumer rights." Id. § 1693(b).

153.    Any waiver of EFTA rights is void. "No writing or other agreement between a consumer and any other person may contain any provision which constitutes a waiver of any right conferred or cause of action created by this subchapter." 15 U.S.C. § 1693l.

154.    JustAnswer's transfers of money from the bank accounts of Plaintiffs and members of the Nationwide EFTA Subclass, via their debit cards, as alleged herein, are "electronic fund transfers" within the meaning of the EFTA and the EFTA's implementing regulations, known as Regulation E and codified at 12 C.F.R. §§ 205 *et seq*. An "electronic fund transfer" means "any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account." 15 U.S.C. § 1693a(7). The term is expressly defined to include "[t]ransfers resulting from debit card transactions, whether or not initiated through an electronic terminal." 12 C.F.R. § 205.3(b)(v).

155.    The EFTA defines the term "preauthorized electronic transfer" as "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. §

1693a(9). The Official Staff Interpretation of Regulation E describes a "preauthorized electronic transfer" as "one authorized by the consumer in advance of a transfer that will take place on a recurring basis, at substantially regular intervals, and will require no further action by the consumer to initiate the transfer." 12 C.F.R. Part 205, Supp. I, § 205.2(k), cmt. 1.

156.    Section 1693e(a) of the EFTA prohibits preauthorized electronic transfers without written authorization: "A preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. § 1693e(a). Similarly, Regulation E provides: "Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

157.    Plaintiff and members of the Nationwide EFTA Subclass each maintained an "account" as that term is defined in 15 U.S.C § 1693a(2) and are "consumers" within the meaning of 15 U.S.C. § 1693a(5).

158.    JustAnswer uniformly and routinely initiated preauthorized electronic fund transfers and took money from the bank accounts of the Plaintiffs and members of the Nationwide EFTA Subclass without obtaining their written authorization for the transfers, as required by the EFTA and Regulation E.  JustAnswer also uniformly and routinely failed to provide a copy of any such written authorization to Plaintiffs and the Nationwide EFTA Subclass members from whose bank accounts JustAnswer took preauthorized electronic fund transfers for monthly membership fees.

159.    JustAnswer took funds from bank accounts managed by Plaintiffs via debit card. In none of these instances did JustAnswer obtain Plaintiffs written authorization, nor did JustAnswer provide Plaintiffs with copies of any such written authorizations.

160.    The Official Staff Interpretation of Regulation E explains, "when a third-party payee," such as JustAnswer, "fails to obtain the authorization in writing or fails to give a copy to the consumer … it is the third-party payee that is in violation of the regulation." 12 C.F.R. Part 205, Supp. I, § 205.10(b), cmt. 2.

161.    As a direct and proximate result of JustAnswer's violations of the EFTA and Regulation E, Plaintiffs and class members have suffered damages in the amount of the unauthorized debits taken by JustAnswer. 15 U.S.C. § 1693m. As a further direct and proximate result of JustAnswer's violations of the EFTA and Regulation E, Plaintiffs and the Nationwide EFTA Subclass members are entitled to recover statutory damages in the amount of "the lesser of $500,000 or 1 per centum of the net worth of the defendant." Id. § 1983m(a)(2)(B).

162.    Pursuant to 15 U.S.C. § 1693m, Plaintiffs and the Nationwide EFTA Subclass are also entitled to recover costs of suit and attorneys' fees from JustAnswer.

## SECOND CAUSE OF ACTION
### False Advertising - Violation of the California Automatic Renewal Law
### (On Behalf of Plaintiffs and the California Class Members)

163.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

164.    Plaintiffs are informed and believe and thereon allege that, during the applicable statute of limitations period, Defendants have enrolled consumers, including Plaintiffs and Class members, in an automatic renewal program and have violated the ARL by, among other things, (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer; (b) charging the consumer's credit card, debit card, or third-party payment account for an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosure of all automatic renewal offer terms; and (c) failing to provide an

33

acknowledgment that includes clear and conspicuous disclosure of all automatic renewal offer terms, the cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer and that provides a mechanism for cancellation that is cost-effective, timely, and easy to use, all in violation of § 17602(a) and (b).

165.    Plaintiffs have suffered injury in fact and lost money as a result of Defendants' violations of ARL.

166.    Pursuant to Bus. & Prof. Code § 17535, Plaintiffs and Class members are entitled to restitution of all amounts that Defendants charged to Plaintiffs' and Class members' credit cards, debit cards, or third-party payment accounts in connection with an automatic renewal membership program during the four years preceding the filing of this Complaint and continuing until Defendants' statutory violations cease.

167.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein.  Pursuant to § 17535, on behalf of themselves, the Class members, and for the benefit of the general public of the State of California, Plaintiffs seek an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

**THIRD CAUSE OF ACTION**
**Violation of the California Consumers Legal Remedies Act**
**(On Behalf of Plaintiffs and the California Class Members)**

168.    Plaintiffs incorporate the allegations of the previous paragraphs as though set forth herein.

169.    Plaintiffs are "consumers" within the meaning of Civil Code § 1761(d) in that Plaintiffs sought or acquired Defendants' goods and/or services for personal, family, or household purposes.

170.     Defendants' membership programs pertain to "goods" or "services" within the meaning of Civil Code § 1761(a) and (b).

171.     The payments by Plaintiffs and Class members are "transactions" within the meaning of Civil Code § 1761(e).

172.     Defendants have violated Civil Code § 1770, subdivisions (a)(5), (9), and (14), by representing that Defendants' goods or services have characteristics that they do not have; advertising goods and services with the intent not to sell them as advertised; and representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

173.     Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein.  Pursuant to Civil Code § 1780(a)(2), on behalf of the Class and also for the benefit of the general public of the State of California, Plaintiffs seek an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

### FOURTH CAUSE OF ACTION
**Violation of the California Unfair Competition Law**
**(On Behalf of Plaintiffs and the California Class Members)**

174.     Plaintiffs incorporate the previous allegations as though fully set forth herein.

175.     The Unfair Competition Law defines unfair competition as including any unlawful, unfair, or fraudulent business act or practice; any unfair, deceptive, untrue, or misleading advertising; and any act of false advertising under § 17500.  (Bus. & Prof. Code, § 17200).

176.     In the course of conducting business in California within the applicable limitations period, Defendants committed unlawful, unfair, and/or fraudulent business practices, and engaged in unfair, deceptive, untrue, or misleading advertising, by, inter alia and without limitation: (a) failing to present automatic renewal offer terms in a clear and conspicuous manner before a

subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to a request for consent to the offer, in violation of § 17602(a)(l); (b) charging the consumer's credit card, debit card, or third-party payment account in connection with an automatic renewal without first obtaining the consumer's affirmative consent to an agreement containing clear and conspicuous disclosures of all automatic renewal offer terms, in violation of § 17602(a)(2); (c) failing to provide an acknowledgment that includes clear and conspicuous disclosure of all required automatic renewal offer terms, the cancellation policy, and information regarding a cancellation mechanism that is cost-effective, timely, and easy-to-use, and failing to provide such an acknowledgment in a manner capable of being retained by the consumer, in violation of § 17602(a)(3); (d) representing that Defendants' goods or services have certain characteristics that they do not have, in violation of Civil Code § 1770(a)(5);(e) advertising goods and services with the intent not to sell them as advertised, in violation of Civil Code § 1770(a)(9); and (f) representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law, in violation of Civil Code § 1770(a)(14). Plaintiffs reserve the right to identify other acts or omissions that constitute unlawful, unfair or fraudulent business acts or practices, unfair, deceptive, untrue or misleading advertising, and/or other prohibited acts.

177.    Defendants' acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

178.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

179.    Defendants' acts, omissions, nondisclosures, and statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

180.    Plaintiffs have suffered injury in fact and lost money as a result of Defendants' acts of unfair competition.

181.    Pursuant to § 17203, Plaintiffs and the Class members are entitled to restitution of all amounts paid to Defendants in connection with an automatic renewal membership program in the four years preceding the filing of this Complaint and continuing until Defendants' acts of unfair competition cease.

182.    Unless enjoined and restrained by this Court, Defendants will continue to commit the violations alleged herein.  Pursuant to § 17203, on behalf of the Class, and also for the benefit of the general public of the State of California, Plaintiffs seek an injunction prohibiting Defendants from continuing their unlawful practices as alleged herein.

## FIFTH CAUSE OF ACTION
### Violations of New York General Business Law § 349
### (On Behalf of Plaintiffs and the New York Class Members)

183.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

184.    Plaintiff brings this claim under N.Y. GEN. BUS. LAW § 349 on her own behalf and on behalf of each member of the Class.

185.    New York's consumer fraud statute prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. GEN. BUS. LAW §349.

186.    Defendant's marketing and billing practices are consumer-oriented in that they are directed at members of the consuming public.

187.    By engineering and implementing fraudulent billing and advertising practices, Defendant engaged in, and continues to engage in, deceptive acts and practices in violation of N.Y. GEN. BUS. LAW §349.

188.    Defendant has violated N.Y. GEN. BUS. LAW §349 statute by, inter alia:

a.    Engaging in a marketing and billing program that is likely to mislead a reasonable consumer acting reasonably under the circumstances;

b.    Using a billing mechanism that automatically charges customers without their awareness or consent and failing to provide adequate disclosures regarding the charges that will be imposed;

c.    Omitting material information in order to prevent customers from cancelling their trial before the last day of the trial period;

d.    Failing to provide customers with an "agreement" or "terms of service" adequately disclosing all material terms and cancellation instructions before locking them into a subscription plan; and

e.    Curtailing customers' ability to easily cancel their subscription to JustAnswer prior to the expiry of the trial period.

189.    The aforementioned acts are unfair, unconscionable and deceptive and are contrary to the public policy of New York, which aims to protect consumers.

As a direct and proximate result of Defendant's unlawful and deceptive marketing and billing practices, the Class has suffered injury and monetary damages in an amount to be determined at the trial of this action.

190.    Plaintiff and the members of the New York Class further seek equitable relief against Defendant.  Pursuant to N.Y. GEN. BUS. LAW §349, this Court has the power to award

such relief, including but not limited to, an order declaring Defendant's practices to be unlawful, an order enjoining Defendant from engaging in any further unlawful conduct, and an order directing Defendant to refund to the Plaintiff and the Class all monthly fees wrongfully assessed and/or collected on its auto-renew subscription plan.

**SIXTH CAUSE OF ACTION**
**Violation of N.C.G.S. § 75-41 (Bus. & Prof. Code, § 17600 et seq. and § 17535)**
**(On Behalf of North Carolina Plaintiff and All Class Members)**

191.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

192.    Pursuant to N.C.G.S. § 75-41, any person engaged in commerce that sells, leases, or offers to sell or lease, any products or services to a consumer pursuant to a contract, where the contract automatically renews unless the consumer cancels the contract, shall do all of the following: (1) Disclose the automatic renewal clause clearly and conspicuously in the contract or contract offer; (2) Disclose clearly and conspicuously how to cancel the contract in the initial contract, contract offer, or with delivery of products or services; (3) For any automatic renewal exceeding 60 days, provide written notice to the consumer by personal delivery, electronic mail, or first-class mail, at least 15 days but no earlier than 45 days before the date the contract is to be automatically renewed, stating the date on which the contract is scheduled to automatically renew and notifying the consumer that the contract will automatically renew unless it is cancelled by the consumer prior to that date; and (4) If the terms of the contract will change upon the automatic renewal of the contract, disclose the changing terms of the contract clearly and conspicuously on the notification in at least 12 point type and in bold print.  Here Defendant's subscriptions to The JustAnswer violates all requirements under N.C.G.S. § 75-41.

193.    Defendant is not afforded any of the protections of N.C.G.S. § 75-41(c) as, upon information and belief, Defendant cannot demonstrate that it: (1) has established and implemented

written procedures to comply with N.C.G.S. § 75-41 and enforces compliance with the procedures; (2) any failure to comply with N.C.G.S. § 75-41 is the result of error; and (3) where an error has caused the failure to comply with N.C.G.S. § 75-41, Defendant provides a full refund or credit for all amounts billed to or paid by Plaintiff and Class members from the date of the renewal until the date of the termination of the contract, or the date of the subsequent notice of renewal, whichever occurs first.

194.    Plaintiff and Class members have been harmed in the amounts that they otherwise would not have paid.

195.    Plaintiff and Class members would have cancelled their subscriptions had they been provided notice of their subscriptions renewing.

## SEVENTH CAUSE OF ACTION
### Unfair and Deceptive Trade Practices
### (On Behalf of North Carolina Plaintiff and All Class Members)

196.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

197.    Defendant's acts and omissions as set forth herein were in or affecting commerce.

198.    As set forth herein, Defendant has violated the provisions of N.C.G.S. Chapter 75; specifically, N.C.G.S. § 75-41.

199.    N.C.G.S. § 75-16 provides: "If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."

200.    Defendant has committed an unfair and deceptive trade practice as defined by N.N.C.G.S. § 75-16.

201.    Plaintiff and Class members are entitled to an award of treble damages against Defendant pursuant to N.C.G.S. § 75-16.

**EIGHTH CAUSE OF ACTION**
**Florida Deceptive Trade Practices Act**
**(On Behalf of Plaintiffs and the Florida Class Members)**

202.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

203.    Defendant's autorenewal terms, given their lack of proximity to the request for authorization, were not clear.

204.    To this regard, Defendants' business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the Florida Deceptive and Unfair Trade Practices Act, § 501.201, et seq. ("FDUTPA").

205.    At all relevant times, Plaintiff and class members were "consumers" within the meaning of the FDUTPA. F.S.A. § 501.203(7).

206.    Defendants' conduct, as set forth herein, occurred in the conduct of "trade or commerce" within the meaning of the FDUTPA. F.S.A. § 501.203(8).

207.    Defendant's omissions and practices described herein were likely to, and did in fact deceive and mislead members of the public, including Plaintiffs and class members, acting reasonably under the circumstances, to their detriment.  By failing to disclose the true risks of using JustAnswer and failing to engage in fair and upright business practices, Defendants violated FDUTPA.

208.    Defendants failed to reveal facts that were material to Plaintiffs and class members' decisions to try JustAnswer, and Defendants intended that Plaintiff and class members would rely upon the omissions.

209.    Defendants' actions impact the public interest because Plaintiff and class members were injured in exactly the same way as hundreds or thousands of others using as a result of and pursuant to Defendants' generalized course of deception.

210.    Had Plaintiffs and class members known the truth about Just Answer's subscription fees, they would not have tried JustAnswer or would have cancelled their subscriptions prior to the renewal of the subscriptions, so as not to incur additional fees.

211.    The foregoing acts, omissions and practices proximately caused Plaintiffs and class members to suffer actual damages for which they are entitled to recover such damages, together with attorneys' fees and costs of suit.

## NINTH CAUSE OF ACTION
### Conversion
### (On Behalf of Plaintiffs and the Nationwide Class)

212.    Plaintiffs incorporate the previous allegations as though fully set forth herein.

213.    Defendants have enrolled consumers, including Plaintiff Plaintiffs and members of the Classes, in automatic renewal programs and/or continuous service programs and have (a) failed to present the automatic renewal or continuous service offer in a clear and conspicuous manned before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer, in violation of § 17602(a)(1); (b) charging the consumer's credit or debit card or the consumer's third-party payment account for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to an agreement containing clear and

conspicuous disclosures of the automatic renewal offer terms or continue service offer terms, in violation of § 17602(a)(2); and (c) failed to provide an acknowledgment that includes the required clear and conspicuous disclosure of automatic renewal or continuous service offer terms, cancellation policy, information regarding how to cancel, and a toll-free telephone number, electronic mail address, postal address or other mechanism for cancellation, in violation of § 17602(a)(3) and § 17602(b).

214.   Plaintiffs and members of the Classes have suffered injury in fact and lost money as a result of Defendant's unlawful failure to obtain authorization to transfer autorenewal funds for its monthly memberships.

215.   Defendants' collection and retention of money resulted in the wrongful exercise of dominion over property belonging to Plaintiffs and members of the Classes and Plaintiffs and members of the Classes are entitled to restitution of all amounts that Defendants charged to Plaintiff's and members of the Classes' credit cards, debit card, or thirty-party payment accounts.

**TENTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf of Plaintiffs and the Class)**

216.   Plaintiffs incorporate the previous allegations as though fully set forth herein.

217.   Defendant's practice of failing to adequately advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Laws, and/or failure to provide an easy way to cancel as advertised are material facts that influenced Plaintiffs and the class members' subscription to the service.

218.   At the time Defendant made the misrepresentations, Defendant knew or should have known that the misrepresentations were false, or Defendant made the misrepresentations without knowledge of their truth or veracity.

219.   Plaintiffs and the class members reasonably, justifiably, and detrimentally relied on the misrepresentations and, as a proximate result thereof, have and will continue to suffer damages.

## ELEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Class)

220.   Plaintiffs incorporate the previous allegations as though fully set forth herein allegation contained elsewhere in this Complaint as if fully set forth herein.

221.   By failing to adequately advise consumers that they would enter into automatic renewals, failure to provide the acknowledgement required by the Automatic Renewal Law, and failure to provide an easy way to cancel as advertised, Defendant was unjustly enriched at the expense of Plaintiffs and class members. It would be inequitable, unjust, and unconscionable for Defendant to retain the profit it received by unauthorized subscription payments.

222.   Plaintiffs seek disgorgement of all proceeds, profits, benefits, and other compensation obtained by Defendant from their improper and unlawful subscription charges, as well as all other appropriate relief permitted by law of unjust enrichment, including reasonable attorneys' fees and costs of suit.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)   Issue an order certifying the Classes defined above, appointing the Plaintiff as Class representative, and designating Milberg Coleman Bryson Phillips Grossman PLLC as Class Counsel;

(b)   Find that Defendant has committed the violations of law alleged herein;

(c)   Determine that Defendant has been unjustly enriched as a result of its wrongful conduct, and enter an appropriate order awarding restitution and monetary damages to the Nationwide Class or, alternatively, the State Classes;

(d)     Enter an order granting all appropriate relief including injunctive relief on behalf of the State Classes under the applicable state laws;

(e)     Render an award of compensatory damages, the exact amount of which is to be determined at trial;

(f)     Render an award of punitive damages;

(g)     Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(h)     Grant all such other relief as the Court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated:  October 13, 2022                              Respectfully Submitted,


                                                      */s/ John J. Nelson*
                                                      John J. Nelson (SBN 317598)
                                                      MILBERG COLEMAN BRYSON
                                                      PHILLIPS GROSSMAN, PLLC
                                                      280 South Beverly Drive
                                                      Beverly Hills, California 90212
                                                      Tel.:    (858) 209-6941
                                                      jnelson@milberg.com

45