1   RANDOLPH GAW (S.B. #223718)
    rgaw@gawpoe.com
2   VICTOR MENG (S.B. #254102)
    vmeng@gawpoe.com
3   FLORA VIGO (S.B. #239643)
    fvigo@gawpoe.com
4   GAW | POE LLP
    4 Embarcadero, Suite 1400
5   San Francisco, CA 94111
    Telephone: (415) 766-7451
6   Facsimile: (415) 737-0642

7   Attorneys for Defendant JustAnswer LLC

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                      **SAN FRANCISCO DIVISION**

11

12
    JESSICA QUAMINA, et al.                    Case No. 3:22-CV-06051-JD
13
                    Plaintiffs,               **DEFENDANT'S NOTICE OF MOTION
14                                             AND MOTION TO COMPEL
            v.                                 ARBITRATION AND STAY
15                                             PROCEEDING**
    JUSTANSWER LLC.
16                                             Hearing Date: March 16, 2023
                    Defendant.                 Time: 10:00 am
17                                             Courtroom: 11

18
                                               Judge: Hon. James Donato
19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDING**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

Please take notice that on March 16, 2023, at 10:00 am, or as soon thereafter as it may be heard, in Courtroom 11 of the United States District Court for the Northern District of California, located at 450 Golden Gate Ave., San Francisco, California 94102, defendant JustAnswer LLC ("JustAnswer") will and hereby does move for an order compelling Plaintiffs to arbitrate their claims against JustAnswer, and staying this proceeding. JustAnswer makes this motion pursuant to section 4 of the Federal Arbitration Act (9 U.S.C. §§ 1-16) on the grounds that Plaintiffs are bound by a written agreement to arbitrate the subject matter of the Complaint and that their claims implicate interstate commerce. In addition, while arbitration of Plaintiffs' claims is pending, further proceedings "shall" be stayed "until an arbitration is had." *See* 9 U.S.C. § 3.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the concurrently filed declarations of Randolph Gaw and Pranav Nayak, the record and all pleadings and papers on file in this action, any relevant matters that are judicially noticeable, and such other or further argument or evidence as may be presented to the Court at or before the hearing hereof.

**STATEMENT OF RELIEF SOUGHT**

JustAnswer seeks an order compelling Plaintiffs to arbitrate all of their claims for relief against JustAnswer and staying this action pending the completion of that arbitration.

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiffs are required to arbitrate their claims for relief against JustAnswer pursuant to its Terms of Service.

2.      Whether the Court must stay this proceeding pending the completion of Plaintiffs' arbitration against JustAnswer.

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

1

## **TABLE OF CONTENTS**

2

3   INTRODUCTION ................................................................................................................ 1

4   STATEMENT OF FACTS .................................................................................................. 1

5   ARGUMENT ....................................................................................................................... 4

6   I.      THE COURT SHOULD HOLD THAT PLAINTIFFS AGREED TO JUSTANSWER'S
            TERMS OF SERVICE UNDER CALIFORNIA LAW.................................................... 6

7
        A.      All Plaintiffs Had Actual Knowledge of JustAnswer's Terms of Service. .................. 7
8
        B.      At a Minimum, Plaintiffs Had Inquiry Notice of the Terms of Service. ...................... 8
9
        C.      Quamina Released Her Claims Against JustAnswer. .................................................. 10
10
        D.      *Sellers* Cannot Impose Any Additional Hurdles to Compelling Arbitration.............. 11
11
    II.     THE NON-CALIFORNIA PLAINTIFFS SHOULD BE DEEMED TO HAVE ENTERED
12          INTO THE TERMS OF SERVICE UNDER THEIR STATE'S LAW. ......................... 12

13      A.      McDowell Entered Into the Terms of Service Under New York Law. ....................... 13

14      B.      Pettit and Nelson Entered Into the Terms of Service Under Florida Law. .................. 13

15  III.    ANY OTHER CHALLENGES TO ARBITRATION MUST BE HEARD BY THE
            ARBITRATOR................................................................................................................ 14
16
    CONCLUSION ................................................................................................................... 15
17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Arencibia v. AGA Serv. Co.*,
5
    533 F. Supp. 3d 1180 (S.D. Fla. 2021) ................................................................. 14

6

*AT&T Mobility LLC v. Concepcion*,
7
    563 U.S. 333 (2011) ............................................................................................... 11

8

*Bell v. Royal Seas Cruises, Inc.*,
    2020 WL 5742189 (S.D. Fla. May 13, 2020) ....................................................... 14

9

*Berman v. Freedom Financial Network, LLC*,
10
    30 F.4th 849 (9th Cir. 2022) ....................................................................... 6, 7, 9, 13

11

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
    No. 17CV04570LAKKHP, 2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) .......... 13

12

*Brennan v. Opus Bank*,
13
    796 F.3d 1125 (9th Cir. 2015) ............................................................................... 14

14

*Caremark, LLC v. Chickasaw Nation*,
15
    43 F.4th 1021 (9th Cir. 2022) .................................................................................. 5

16

*Carrico v. City and County of San Francisco*,
    656 F.3d 1002 (9th Cir. 2011) ............................................................................... 11

17

*Delux Pub. Charter, LLC v. Cnty. of Orange*,
18
    No. SACV202344JVSKESX, 2022 WL 2062472 (C.D. Cal. May 6, 2022) .......... 6

19

*Eiess v. USAA Fed. Sav. Bank*,
20
    404 F. Supp. 3d 1240 (N.D. Cal. 2019) .................................................................. 5

21

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) .......................................................................................... 12

22

*Freedline v. O Organics*,
23
    No. 19-CV-01945-JD, 2020 WL 6290352 (N.D. Cal. Oct. 27, 2020) .................. 11

24

*Kindred Nursing Centers Ltd. Partnership v. Clark*,
25
    137 S. Ct. 1421 (2017) ..................................................................................... 11, 12

26

*Kravets v. Anthropologie, Inc.*,
    No. 22-CV-60443, 2022 WL 1978712 (S.D. Fla. June 6, 2022) .......................... 14

27

*Lamps Plus, Inc. v. Varela*
28
    139 S. Ct. 1407 (2019) .......................................................................................... 11

    DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

*McLellan v. Fitbit, Inc.*,
  No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017)...................................15

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017)...........................................................................................10

*Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*,
  No. 16-CV-01864-EMC, 2016 WL 5407898 (N.D. Cal. Sept. 28, 2016) .............................14

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016).......................................................................................15

*Momot v. Mastro*,
  652 F.3d 982 (9th Cir. 2011).........................................................................................15

*Mortensen v. Bresnan Commc'ns, LLC*,
  722 F.3d 1151 (9th Cir. 2013).........................................................................................5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...........................................................................................................4

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014).........................................................................................5

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
  96 F.3d 1151 (9th Cir. 1996)...........................................................................................5

*Patrick v. Running Warehouse, LLC*,
  No. 221CV09978ODWJEMX, 2022 WL 10584136 (C.D. Cal. Oct. 18, 2022)....................10

*Pokorny v. Quixtar, Inc.*,
  601 F.3d 987 (9th Cir. 2010)...........................................................................................5

*Saperstein v. Thomas P. Gohagan & Co.*,
  476 F. Supp. 3d 965 (N.D. Cal. 2020) .............................................................................5

*Selden v. Airbnb, Inc.*,
  4 F.4th 148 (D.C. Cir. 2021) .........................................................................................10

*Sellers v. JustAnswer LLC*,
  73 Cal. App. 5th 444 (2021) ..........................................................................9, 10, 11, 12

*Shirley v. Rocket Mortg.*,
  No. 2:21-CV-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) ...................................7, 8

*Silver v. Stripe Inc.*,
  No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021)...........................10

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

*Snow v. Eventbrite, Inc.*,
  No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) .......................... 6, 7

*Thorne v. Square, Inc.*,
  No. 20CV5119NGGTAM, 2022 WL 542383 (E.D.N.Y. Feb. 23, 2022).............................. 13

*Viking River Cruises, Inc. v. Moriana*,
  142 S. Ct. 1906 (2022) ........................................................................................................ 12

*Williams v. Eaze Sols., Inc.*,
  417 F. Supp. 3d 1233 (N.D. Cal. 2019) ................................................................................. 5

**Statutes**

9 U.S.C. § 3 .................................................................................................................................. 5

Cal. Civ. Code § 1694.2(e)........................................................................................................ 12

Cal. Civ. Code § 1694.7(e)........................................................................................................ 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

Defendant JustAnswer, LLC operates an online service where people can ask questions and get fast answers from experts.  People can ask questions in any category—such as mechanics, vets, computer techs, plumbers, and others—and JustAnswer connects them to an expert in minutes.  They then chat with their expert until they have an answer.  JustAnswer serves millions of people and has over twelve thousand experts in seven hundred categories.  JustAnswer has saved millions of dollars for its customers over the company's lifetime while helping them acquire the information they need to resolve their issues.

Plaintiffs signed up for JustAnswer and availed themselves of its services.  When they created their account, and when they used JustAnswer's services, they knowingly consented to its Terms of Service ("TOS") and its arbitration agreement.  And JustAnswer repeatedly notified and reminded Plaintiffs about its TOS, such as the following:

- When the California plaintiffs first visited JustAnswer, they were notified, as they submitted their question to an expert, that they were agreeing to the hyperlinked TOS.
- Next, in order to complete the process of signing up for JustAnswer, each plaintiff was again notified—through visual means that made it impossible for them to miss—that by continuing, they were agreeing to the hyperlinked TOS.
- Then, after each plaintiff signed up for JustAnswer, they received additional written notices—whether by e-mail, SMS, through JustAnswer's chat interface, or a combination thereof—that put them on further notice about the TOS.

After receiving these notices, Plaintiffs proceeded to repeatedly use JustAnswer's services.  The Court should therefore find that Plaintiffs had actual knowledge (or at least inquiry notice) of the TOS, had entered into a valid arbitration agreement and class action waiver with JustAnswer, and should be required to arbitrate their claims for relief.

## **STATEMENT OF FACTS**

### *JustAnswer's Business*

JustAnswer is a limited liability company organized under the laws of Idaho.  (Declaration of Pranav Nayak ("Nayak Decl.") ¶ 3.)  It runs a website and mobile app whereby users posing

- 1 -

questions on a wide variety of topics are matched with experts (such as appraisers, veterinarians, or mechanics) with the appropriate subject-matter expertise to answer those questions.  (*Id.* ¶ 4.)  Its users and experts are located throughout the United States, as well as internationally.  (*Id.* ¶ 5.)

### *JustAnswer's Repeated Notifications About Its Terms of Service*

When each of the Plaintiffs first visited JustAnswer, they were invited to submit a question for a subject matter expert to answer.[1]  (*Id.* ¶¶ 14-20 & Exs. 4 & 5.)  As Quamina and Godun submitted their question, JustAnswer presented them with a textual notice stating that "By chatting and providing personal info, you understand and agree to our Terms of Service and Privacy Policy" along with hyperlinks to those agreements.[2]  (*Id.* ¶¶ 16, 18, 20 & Exs. 4 & 5.)

After Plaintiffs submitted their initial question, JustAnswer informed them that in order to get a response to their question, they had to sign up for a JustAnswer membership.  (*Id.* ¶ 21.)  Each Plaintiff was then directed to a "Payments Page" on JustAnswer's website where they had to enter in their e-mail address and payment information.  (*Id.* ¶ 22; *see also* Comp. ¶ 33.)  JustAnswer disclosed on this Payments Page that it charged new users a "join fee" and a monthly membership charge.  (*Id.* ¶¶ 23-31 & Exs. 6-9.)  Immediately below the payment information fields, JustAnswer presented the following textual notice (or a slight variation thereof)—which took up the entire width of the screen:

> I agree to the Terms of Service, Privacy Policy, and am 13+ years old.  I understand this membership renews automatically and will continue until I cancel.
>
> I can cancel anytime.  Prior charges will not be refunded.

(*Id.*)  The phrase "Terms of Service" is a hyperlink taking the user to the TOS.  (*Id.*)  Immediately

---

[1] As detailed in the concurrently filed Declaration of Pranav Nayak, there is variance in each JustAnswer user's experience in signing up for the website.  The description provided herein is that of the individual Plaintiffs only.  Moreover, despite being requested to do so, Plaintiffs have not provided the e-mails they used to sign up for JustAnswer and as a result, JustAnswer has been unable to locate Nelson in its system.  (Declaration of Randolph Gaw ("Gaw Decl.") ¶ 2; Nayak Decl. ¶ 12.)  Thus, JustAnswer is describing the experience Nelson would have had if she enrolled in JustAnswer in December 2020 as she alleges.  (Comp. ¶ 95.)

[2] Screen captures of these webpages are provided in the Nayak Declaration and as attached exhibits thereto.

below this textual notice is an "Connect now" (or "Confirm now" for certain plaintiffs) button that the user clicks to complete their signup.  (*Id.*)  Godun, Foust, McDowell, and Pettit all saw this screen (or a similar variant thereof):



(*Id.*)  Quamina, Nelson, and Davis signed up for trial memberships and saw a different version of this Payments Page but it also included a similar textual notice.  (*Id.* ¶¶ 32-36 & Exs. 10-11.)

After Plaintiffs finished signing up for JustAnswer, the company sent them a welcome e-mail.  (*Id.* ¶¶ 41-43 & Ex. 12.)  The contents of the e-mail received by most of the plaintiffs reminded them that (i) JustAnswer had charged them for both the join fee and the monthly membership fee, (ii) that the membership renews automatically, and (iii) JustAnswer would continue to charge the membership fee until the user canceled their account.  (*Id.*)  Another hyperlink to the TOS is also included when JustAnswer invites the user to "Learn More" about their membership.  (*Id.*)  The plaintiffs that signed up for JustAnswer while providing a mobile phone number—Quamina, McDowell, Godun, Pettit and Foust—were additionally sent a welcome SMS stating: "Welcome to JustAnswer! The Expert will text you here with a response. Text HELP for help and STOP to end. See terms of service:www.justanswer.com/info/terms-of-service?r=sms"  (*Id.* ¶¶ 44-46.)  The hyperlink takes the user to the TOS.  (*Id.*)

After completing the signup process, Plaintiffs were given access to a chat interface whereby they could (and did) submit follow up questions to JustAnswer's experts and get replies

to those questions.  (*Id.* ¶ 47.)  Immediately below the chat interface (i.e., the part featuring the most recent exchanged communication) was a notice stating: "Your conversation is covered by the <u>Disclaimer</u>."  (*Id.* ¶¶ 48-49 & Ex. 13.)  The hyperlink takes the user to JustAnswer's 2-page Disclaimer page, which includes two separate reminders and hyperlinks to the TOS.  (*Id.* ¶ 51 & Ex. 14.)  Each communication between a user and an expert included the disclaimer.  (*Id.* ¶ 50.)

### *The Arbitration Agreement Within JustAnswer's Terms of Service*

The hyperlinked "<u>Terms of Service</u>" in JustAnswer's various disclosures takes one to TOS.  (*Id.* ¶. 51)  The very first paragraph of the TOS alerts the reader—in bold and in all-caps—that "THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION AND CLASS ACTION WAIVER.  IT AFFECTS YOUR LEGAL RIGHTS AS DETAILED IN THE ARBITRATION AND CLASS ACTION WAIVER SECTION BELOW."  (*Id.*, Ex. 1 at 2.)  The word "BELOW" is hyperlinked to take the reader directly to Section 18 of the TOS, which contains an arbitration agreement and class action waiver.  (*Id.* ¶ 7 & Ex. 1 at 25.)  Section 19 of the TOS also contains an Idaho choice of law clause.  (*Id.*, Ex. 1 at 29.)

Three plaintiffs—Quamina, Nelson, and Davis—signed up for JustAnswer prior to the enactment of the 2022 TOS, however.  (*Id.* ¶¶ 39-40; *see also* Comp. ¶¶ 60, 95, 102.)  Quamina and Nelson were subject to the TOS dated November 16, 2020.  (Nayak Decl. ¶ 39 & Ex. 2.)  The Nov. 16, 2020 TOS similarly has an arbitration agreement and class action waiver (in Section 21), similarly notifies the reader in bold and all-caps in the first section of the contract about that arbitration agreement and within that disclosure, the word "BELOW" similarly is a hyperlink that takes the reader immediately to that section.  (*Id.* ¶ 8. & Ex. 2 at 2, 8.)  Davis was subject to the TOS dated October 23, 2018.  (*Id.* ¶ 40 & Ex. 3.)  That version is largely the same as the Nov. 16, 2020 TOS.  (*Id.* ¶ 9 & Ex. 3 at 3, 21.)  All versions of the TOS delegate the issue of arbitrability to the arbitrator.  (*Id.*, Ex. 1 at 26; Ex. 2 at 9; Ex. 3 at 22-23.)

### ARGUMENT

"The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  Here, the FAA governs the

enforcement of the Arbitration Agreements, both because the transactions at issue involve interstate commerce and the Arbitration Agreements expressly state that the FAA applies. *Williams v. Eaze Sols., Inc.*, 417 F. Supp. 3d 1233, 1238 (N.D. Cal. 2019) (Donato, J.). "[T]he FAA's purpose is to give preference (instead of mere equality) to arbitration provisions." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1160 (9th Cir. 2013) (citation omitted). "As arbitration is favored, those parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable." *Id.* at 1157 (citation omitted).

The issues of whether an agreement to arbitrate was ever formed, or the enforceability of a delegation clause contained within an arbitration agreement, is always resolved by a court. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). The party seeking arbitration must prove the existence of an agreement. *Saperstein v. Thomas P. Gohagan & Co.*, 476 F. Supp. 3d 965, 973 (N.D. Cal. 2020). "If the moving party carries this burden, the opposing party must prove any defense to arbitration by the same burden." *Id.* Where a dispute is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until arbitration has been had." 9 U.S.C. § 3.

In determining whether the parties entered into an arbitration agreement, "federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). Because this Court sits in California, its choice of law rules guide the Court's analysis of which state's contract formation law applies. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.,* 96 F.3d 1151, 1164 (9th Cir. 1996) ("In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state ...."); *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1249–50 (N.D. Cal. 2019) ("Where [as here] the underlying basis for CAFA jurisdiction is diversity, the forum state's choice of law rules apply[.]"). Under California law, "when there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994–95 (9th Cir. 2010).

Due to space constraints for this brief, JustAnswer is unable to present a fulsome choice of law analysis and will accordingly focus on California contract law given that it is the law of the forum state.  JustAnswer will thus begin by explaining why the Court should find that Plaintiffs did agree to arbitrate under California law.  JustAnswer then demonstrates why the same result is reached under the laws of the non-California plaintiffs' home state.  Finally, JustAnswer will show that the arbitration agreement's delegation clause is also enforceable and thus any further challenges to arbitration must be resolved by the arbitrator.[3]

## I.   THE COURT SHOULD HOLD THAT PLAINTIFFS AGREED TO JUSTANSWER'S TERMS OF SERVICE UNDER CALIFORNIA LAW.

"To form a contract under… California law, the parties must manifest their mutual assent to the terms of the agreement."  *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citation omitted).  "[I[f a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed."  *Id.* at 856.

Online contracts historically come in three major variants: clickwrap, browsewrap, and sign-in wrap.  *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995, at *3 (N.D. Cal. Sept. 2, 2021).  JustAnswer uses a sign-in wrap agreement as its "'notifies the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advises the user that he or she is agreeing to the terms of service when registering or signing up.'"  *Id.* (citation omitted).

All forms of online contracts are enforceable if the user had actual knowledge (sometimes called "actual notice") of the agreement.  *Berman*, 30 F.4th at 856.  Additionally, online contracts are enforceable if the user is deemed to have been placed on inquiry notice of that agreement.  *Id.*  A user is on inquiry notice of an online contract if the "(1) the website provides reasonably

---

[3] Should the Court deny this motion to compel arbitration, JustAnswer reserves the right to respond to the complaint by filing a Rule 12(b)(6) motion to dismiss.  *See Delux Pub. Charter, LLC v. Cnty. of Orange*, No. SACV202344JVSKESX, 2022 WL 2062472, at *2 (C.D. Cal. May 6, 2022) (explaining that a motion is not a "pleading" and a Rule 12(b) motion may be filed at any time before a responsive pleading is filed).

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.*

Sign-in wrap agreements have been repeatedly enforced by the federal courts as they are deemed to have sufficiently put a user on inquiry notice. *See Snow*, 2021 WL 3931995, at *5. *See also infra* at 10.

**A.      All Plaintiffs Had Actual Knowledge of JustAnswer's Terms of Service.**

The Court should compel arbitration because the only reasonable inference based on the evidence is that Plaintiffs had actual knowledge of the TOS, given the repeated and varied disclosures, and their extensive use of JustAnswer's services following those disclosures. "Courts have found that parties to online agreements have actual knowledge when the parties either admit they had knowledge **or where they were notified of the terms in a subsequent letter and continued to use the website**." *Shirley v. Rocket Mortg.*, No. 2:21-CV-13007, 2022 WL 2541123, at *5 (E.D. Mich. July 7, 2022) (emphasis added) (citations omitted).

Here, every plaintiff received at least one, and sometimes two, textual notices prior to signing up that by using JustAnswer, they were agreeing to the TOS.  (Nayak Decl. ¶¶ 15-36 & Exs. 4-11.)  Then after signing up, most of the plaintiffs additionally received a welcome e-mail reminding them that they had entered into an automatically renewing monthly membership and providing them with another hyperlink to the TOS.  (*Id.* ¶¶ 41-43 & Ex. 12.)  Further, as most of the Plaintiffs signed up with their mobile phone numbers, those users additionally received an SMS from JustAnswer reminding them about the TOS and providing them with a hyperlink to the same.  (*Id.* ¶¶ 44-46.)  All of the Plaintiffs proceeded to (repeatedly) use JustAnswer after getting these reminders.  (*Id.* ¶¶ 53-58.)

Moreover, every time each plaintiff communicated with an expert, they were again provided with a hyperlinked disclaimer, the contents of which included two reminders about, and two hyperlinks to, the TOS.  (*Id.* ¶¶ 47-50 & Ex. 13.)  It is utterly implausible to suggest that Plaintiffs missed seeing this disclaimer each time, especially given how many messages they sent or received.  Godun, for example, over the course of three days asked three different questions to

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

three different JustAnswer experts and exchanged approximately 55 communications in total. (*Id.* ¶ 54.)  McDowell asked two different questions to two different JustAnswer experts and exchanged over 70 communications in total.  (*Id.* ¶ 55.)  Foust exchanged more than two dozen communications on a single question.  (*Id.* ¶ 58.)  Davis asked two different questions of two different experts, **cancelled her $5 trial membership just before that trial converted to a monthly membership, and then signed up again** three months later on another $5 trial membership to ask a third question to a third expert (and then cancelled her trial membership again before it automatically converted).  (*Id.* ¶ 57.)  It is not reasonable for Plaintiffs to assert that they naively believed that their use of JustAnswer came with no terms attached.

Other facts make it unreasonable to assume that Plaintiffs blindly clicked through JustAnswer's webpages without reading its notices and disclosures.  Quamina also had twice signed up for JustAnswer.  (*Id.* ¶ 53.)  And during her second membership, she separately upgraded her plan so that she could speak directly on the phone to a JustAnswer expert about her question.  (*Id.*)  Moreover, despite their purported ignorance of the automatically renewing nature of their monthly membership, Godun, Davis (twice), Foust, McDowell, and Pettit all canceled their memberships before they would have automatically renewed—with some cancelling around a week (or less) before the renewal date.  (*Id.* ¶¶ 54-58.)

Thus, even if one believed that Plaintiffs were unaware of the existence of the TOS when they first signed up for JustAnswer, it would be implausible for them to truthfully claim they remained unaware after the many opportunities JustAnswer provided them.  They continued to repeatedly use JustAnswer's services when they knew (or should have known) that those services were governed by the TOS, and thus manifested their assent to that contract.  *Shirley*, 2022 WL 2541123, at *5.

### B.    At a Minimum, Plaintiffs Had Inquiry Notice of the Terms of Service.

While the Plaintiffs had actual knowledge of the TOS, they also had inquiry notice, which is sufficient to bind them to the TOS and its arbitration clause.  For a textual notice that a user was agreeing to a website's terms of service to be deemed sufficiently conspicuous to put them on inquiry notice of those terms, it "must be displayed in a font size and format such that the court

can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856.  And here, it is important to remember that JustAnswer's e-mail notification, SMS notification, and on-screen notifications were all **in addition to** the conspicuous textual notice that it provided to Plaintiffs on the Payments Page.

In *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 481-82 (2021), the California Court of Appeal held that a 2+ year old, no longer operative version of the Payments Page did not put users on inquiry notice of JustAnswer's TOS.  But as these issues were never put before the *Sellers* court, it never considered the issue of JustAnswer's e-mail notification, SMS notification, or any of the other on-screen notifications.  Consider the differences in these Payment Pages:



The one on the left is what JustAnswer used in *Sellers*.  (Comp. ¶ 16.)  The one on the right is the version used by Pettit.  (Nayak Decl. ¶¶ 30-31 & Ex. 9.)  As the Court can see, JustAnswer moved its textual notice to in-between the credit card fields and the orange "Confirm now" button that the plaintiffs needed to press to complete their transaction.  JustAnswer also added a grey background around the textual notice for added contrast.  As for Godun, McDowell, and Foust, they saw something very similar except JustAnswer replaced the grey background with a blue check mark next to the textual notice to draw even more attention to the disclosure and to unambiguously convey to these plaintiffs that they were affirmatively opting into a contract with JustAnswer.  (*Id.* ¶¶ 24-39 & Exs. 6-8.)  Deliberately putting the textual notice in-

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

between the only two mandatory inputs on the screen means it is implausible for these plaintiffs to claim that they did not see the disclosure as they were completing their JustAnswer signup. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, No. 221CV09978ODWJEMX, 2022 WL 10584136, at *5 (C.D. Cal. Oct. 18, 2022) (holding there was inquiry notice because, in part, "[t]he link is located immediately beneath the 'Place Order' button, making it unavoidable to a consumer placing an online order[.]"); *Silver v. Stripe Inc*., No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *3 (N.D. Cal. July 28, 2021) ("Further, the hyperlink to the privacy policy is located close to the 'place order' button, thus it is hard for a user placing an order to miss it."). *See also Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021) (comparable sign-in wrap agreement put user on inquiry notice); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (same). Moreover, the visual design also makes the notice hard to miss, as the textual notice (black text) contrasts with both the credit card fields (white, see-through) and the "Connect now" button (red with white text). Indeed, in all of these cited cases, the courts held that a sign-in wrap agreement sufficiently put a user on inquiry notice even though the textual notice was adjacent to only a **single** user input, let alone placed in-between the **two** user inputs like JustAnswer did (and JustAnswer also specifically contrasted the textual notice and the two mandatory inputs from each other so that they all stood out).

Quamina, Nelson and Davis's version of the Payments Page also included a textual notice in close proximity to the registration button. (*Id.* ¶¶ 32-36 & Exs. 10-11.) Quamina also received the landing page notification, and SMS notification, and each of them saw the disclaimer in the chat interface. (Nayak Decl. ¶¶ 15-16, 45, 47-50 & Exs. 4 & 13.) Therefore, the only reasonable conclusion is these three were similarly on inquiry notice of the TOS.[4]

## C. Quamina Released Her Claims Against JustAnswer.

It also should be noted that Quamina should not even have standing to bring her claims in the first place. The *Sellers* action was resolved with a class action settlement and all class

---

[4] The Payments Page shown to Davis is almost identical to the one examined in *Sellers*. But again, the *Sellers* court did not address the added notifications, and the *Sellers* plaintiffs were both one-off users, unlike Davis who was a prolific user that signed up and cancelled twice.

1    members released their claims against JustAnswer.  (Gaw Decl. ¶ 3, Ex. A ¶ 12.)  Quamina, who

2    resides in California and signed up for a trial membership in JustAnswer in July 2021 (*see* Comp.

3    ¶ 60; Nayak Decl. ¶ 39), is plainly part of the defined settlement class.  (Gaw Decl., Ex. A ¶ 5.)

4    And she was not one of the two opt-outs to that settlement.  (*Id.*, Ex. A ¶ 6.)  The question of

5    standing may be raised at any time, even *sua sponte*, and at a minimum, the Court should require

6    Quamina to establish that she does have standing to bring her claim.  *Carrico v. City and County*

7    *of San Francisco*, 656 F.3d 1002, 1005 (9th Cir. 2011).

8          **D.**      *Sellers* **Cannot Impose Any Additional Hurdles to Compelling Arbitration.**

9         The *Sellers* court appeared to hold that an arbitration agreement governing an

10   automatically renewing membership is enforceable only if a website's disclosure of that contract

11   meets the statutory notice requirements of the ARL.  *See Sellers*, 73 Cal. App. 5th at 480.  Such a

12   holding would be inapplicable to this case, however, for several reasons.

13         First, the ARL certainly does not apply to non-California residents.  *See Freedline v. O*

14   *Organics*, No. 19-CV-01945-JD, 2020 WL 6290352, at *3 (N.D. Cal. Oct. 27, 2020) (Donato, J.)

15   (recognizing that UCL, FAL, and CLRA claims do not apply to non-Californians).  Here, unlike

16   in *Sellers*, all but two of the plaintiffs (Quamina and Godun) reside outside of California.

17         Second, the FAA would pre-empt any enhanced requirement imposed by the ARL.  As the

18   Court knows, the FAA preempts any state law that imposes a higher threshold for enforceability

19   or formation of an arbitration agreement compared to other contracts, as such a requirement

20   would disfavor arbitration.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011).  Even

21   rules of general applicability cannot be interpreted in a fashion that circumvents the aims of the

22   FAA.  *See Lamps Plus, Inc. v. Varela* 139 S. Ct. 1407, 1418-19 (2019) (ambiguous contract

23   provision cannot be interpreted under California law to permit class wide, as opposed to

24   individual, arbitration because such interpretation is inconsistent with the FAA).  Nor can facially

25   neutral statutes or rules avoid FAA preemption when the practical effect of their enforcement

26   would disfavor arbitration.  *See Kindred Nursing Centers Ltd. Partnership v. Clark*, 137 S. Ct.

27   1421, 1427-28 (2017) (FAA preempted generally applicable court rule regarding power of

28   attorney).  Moreover, FAA preemption applies equally to state law governing contract formation

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

as it does to state law governing contract enforcement. *Id.* at 1428. *See also Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1917–18 (2022) ("even rules that are generally applicable as a formal matter are not immune to preemption by the FAA."); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1622 (2018) ("the saving clause does not save defenses that target arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration[.]'").

Here, to the extent *Sellers* conditions enforcement of an arbitration agreement upon meeting the statutory disclosure requirements of the ARL, that rule is plainly preempted by the FAA. The ARL is not a general defense to contract enforcement (such as the doctrine of unconscionability) or a rule regarding contract formation (as unlike other California consumer protection statutes, the ARL does not make a contract voidable for failing to adhere to its statutory disclosure requirements).[5] And even if the ARL could be construed as a "general" rule in some sense, *Sellers* would run afoul of binding U.S. Supreme Court precedent holding that arbitration agreements stand on equal footing with other contracts, given that its practical effect would only affect consumer contracts (i.e., ones that typically contain arbitration agreements).

## II.   THE NON-CALIFORNIA PLAINTIFFS SHOULD BE DEEMED TO HAVE ENTERED INTO THE TERMS OF SERVICE UNDER THEIR STATE'S LAW.

Other than Quamina and Godun, the other remaining plaintiffs all reside outside of California. McDowell is from New York, Pettit and Nelson are from Florida, and Davis and Foust are from North Carolina. (Comp. ¶¶ 54-58.) Again, due to space constraints, JustAnswer focused on California contract law, and it notes that in the case of Davis and Foust, the North Carolina courts do not appear to have even opined on when an online contract is formed under its law. But in any event, JustAnswer notes that under the laws of New York and Florida, Ms. McDowell, Ms. Pettit, and Ms. Nelson would be deemed to have entered into JustAnswer's arbitration agreement and class action waiver.

---

[5] Other California consumer protection statutes expressly provide that a contract is voidable if the contract fails to meet a conspicuous disclosure requirement. *See, e.g.*, Cal. Civ. Code §§ 1694.2(e) & 1694.7(e).

DEF'S MOT. TO COMPEL ARBITRATION
CASE NO. 3:22-CV-06051-JD

1

**A.      McDowell Entered Into the Terms of Service Under New York Law.**

2          In *Berman*, the Ninth Circuit summarily concluded that New York and California law

3   regarding online contract formation were "substantially similar" and thus yielded the same

4   outcome in that case.  *Berman*, 30 F.4th at 855.  Courts applying New York law have approached

5   questions of notice and assent in this context even more flexibly compared to California law,

6   however.  In particular, the timing of when the textual disclosure and hyperlink are presented is

7   an important factor in determining whether it was sufficiently conspicuous to put a consumer on

8   inquiry notice.  For example, in *Thorne v. Square, Inc.*, No. 20CV5119NGGTAM, 2022 WL

9   542383 (E.D.N.Y. Feb. 23, 2022), the court held that there was inquiry notice of Square's terms

10  of service in large part because the textual disclosure and hyperlinked terms were "temporally

11  coupled" with its registration button, "because (1) that meant that the user could not avoid

12  noticing the hyperlink when she registered for an account, and (2) importantly, that also allowed

13  the plaintiff to review the Terms of Service *prior to* registration."  *Id.* at *8 (cleaned up)

14  (emphasis in original).  The temporal connection was also a key factor in *Bernardino v. Barnes &*

15  *Noble Booksellers, Inc.*, No. 17CV04570LAKKHP, 2017 WL 7309893, at *9 (S.D.N.Y. Nov. 20,

16  2017), as the notice was presented in connection with the user's confirmation of a purchase order.

17         Here, JustAnswer's presentation of its textual notice was temporally coupled with its

18  registration button, as New York law requires.  It presented its textual notice to McDowell

19  immediately below the required payment fields she was required to input and immediately above

20  the "Connect now" button she was required to manually click.  In other words, at the time

21  McDowell was about to consummate her transaction, she "could not avoid noticing the hyperlink

22  when she registered for an account" and was given the opportunity "to review the Terms of

23  Service prior to registration."  *Thorne*, 2022 WL 542383 at *8.  Under New York law, McDowell

24  should be deemed to have assented to JustAnswer's TOS under an inquiry notice standard.

25

**B.      Pettit and Nelson Entered Into the Terms of Service Under Florida Law.**

26         Florida law hasn't yet formally recognized the separate existence of a sign-in wrap

27  agreement, but it holds that browsewrap agreements are enforceable "'when the purchaser has

28  actual knowledge of the terms and conditions, or when the hyperlink to the terms and conditions

is conspicuous enough to put a reasonably prudent person on inquiry notice.'" *Bell v. Royal Seas Cruises, Inc*., 2020 WL 5742189, at \*4 (S.D. Fla. May 13, 2020) (quoting *MetroPCS Commc'ns, Inc. v. Porter*, 273 So. 3d 1025, 1028 (Fla. 2018)).  In particular, the *Bell* court found that a textual notice very similar to JustAnswer's notice was sufficient to put the user on inquiry notice that they were agreeing to applicable terms of service.  *See id*. ("its placement directly over the Continue button, combined with the fact that clicking 'Continue' demonstrates a clearly manifested intent to continue using the Website, would strongly imply to a reasonable user a connection between the 'I understand and agree' statement and clicking Continue.").  *See also Kravets v. Anthropologie, Inc.*, No. 22-CV-60443, 2022 WL 1978712, at \*4 (S.D. Fla. June 6, 2022) ("The Text Terms are located directly above the "GET FREE SHIPPING NOW" button and contain bold and underlined links to additional terms and conditions. Such a placement is sufficient to provide inquiry notice.").  Under Florida law, all iterations of JustAnswer's Payments Page puts users on inquiry notice of the TOS.  *See Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 (S.D. Fla. 2021).

## III.   ANY OTHER CHALLENGES TO ARBITRATION MUST BE HEARD BY THE ARBITRATOR.

To the extent Plaintiffs raise any questions regarding the validity, enforceability or applicability of the arbitration agreement(s), those questions are for the arbitrator because the parties "clearly and unmistakably" agreed to delegate them for two reasons, each of which is independently dispositive. *Brennan v. Opus Bank*, 796 F.3d 1125, 1128-29 (9th Cir. 2015).

First, the 2022 TOS contains explicit, broad language delegating all gateway issues to the arbitrator.  (Nayak Decl., Ex. 1 § 18(b).[6]  This language constitutes a clear agreement to delegate to an arbitrator any questions regarding whether the parties' arbitration agreement "can be

_____

[6] The arbitration agreement contains carve-outs permitting a few types of claims to be brought in court, none of which apply here.  *See* Nayak Decl., Ex. 1 at §§ 18(d), 18(e) (excluding from Arbitration Agreement enforceability of the Agreement's Class Action Waiver, small claims, intellectual property claims, and certain specific declaratory relief or similar equitable claims).  These carve-outs pertain to the scope of the Arbitration Agreement, "rather than to who decide[s] arbitrability."  *See Mike Rose's Auto Body, Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, No. 16-CV-01864-EMC, 2016 WL 5407898, at \*7 (N.D. Cal. Sept. 28, 2016).

1    enforced or whether it applies to the dispute." *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201,

2    1208-09 (9th Cir. 2016) (agreement delegated "issues relating to the 'enforceability, revocability

3    or validity of the Arbitration Provision or any portion of the Arbitration Provision'").  The

4    November 2020 TOS and the October 2018 TOS likewise delegate all gateway arbitrability issues

5    to the arbitrator.  (Nayak Decl., Ex. 2 at § 21(c); Ex. 3 at § 21(c) (same).)  *See also Momot v.*

6    *Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (parties agreed to arbitrate threshold arbitrability via

7    provision stating "If a dispute arises out of or relates to this Agreement, the relationships that

8    result from this Agreement, the breach of this Agreement *or the validity or application of any of*

9    *the provisions of this Section 4*, and, if the dispute cannot be settled through negotiation, the

10   dispute shall be resolved exclusively by binding arbitration.") (emphasis in original).

11          Second, the 2022 TOS expressly incorporates JAMS arbitration rules, and the November

12   2020 TOS and October 2018 TOS expressly incorporate the AAA arbitration rules.  (Nayak

13   Decl., Ex. 1 at 26 (incorporating JAMS Streamlined Arbitration Rules, providing access to same

14   via weblink and telephone number); Ex. 2 at 9 (incorporating AAA Consumer Arbitration Rules,

15   providing access to same via weblink and telephone number); Ex. 3 at 23 (same).)  Such

16   incorporation "constitutes clear and unmistakable evidence that contracting parties agreed to

17   arbitrate arbitrability." *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2

18   (N.D. Cal. Oct. 11, 2017) (Donato, J.) (citation omitted).  Because under both JAMS and AAA

19   arbitration rules disputes over the formation, existence, validity, interpretation or scope of

20   arbitration agreement shall be submitted and ruled on by the arbitrator, their express incorporation

21   here constitutes clear and unmistakable evidence of the parties' intent to delegate arbitrability to

22   the arbitrator.  (Gaw Decl. ¶¶ 4-5 & Ex. B at Rule 8 & Ex. C at R-7.)  Any other challenge by

23   Plaintiffs to the arbitration agreement(s) must be resolved by the arbitrator.

24                                  **CONCLUSION**

25          For the reasons set forth above, the Court should grant JustAnswer's motion to compel

26   arbitration and stay judicial proceedings in this matter.

27

28

1

2       DATED:  January 10, 2023              GAW | POE LLP

3                                            By: _____

4                                            Randolph Gaw
                                             Attorneys for Defendant JustAnswer, LLC
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28