1  John J. Nelson (SBN 317598)
2  MILBERG COLEMAN BRYSON
3  PHILLIPS GROSSMAN, PLLC
4  280 South Beverly Drive
5  Beverly Hills, California 90212
6  Tel.: (858) 209-6941
7  jnelson@milberg.com
8
9  *Attorney for Plaintiffs and the Class*
10
11              **UNITED STATES DISTRICT COURT**
12             **NORTHERN DISTRICT OF CALIFORNIA**
13                **SAN FRANCISCO DIVISION**
14

15

JESSICA QUAMINA, et al.

                    Plaintiffs,

        v.

JUSTANSWER LLC.,

                    Defendant.

Case No. 3:22-CV-06051-JD

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Hearing Date: March 16, 2023
Time: 10:00 a.m.
Courtroom: 11

Judge: Hon. James Donato

16

1      **<u>TABLE OF CONTENTS</u>**

2   Statement of Issues to Be Decided..................................................................................1

3   INTRODUCTION ........................................................................................................1

4   FACTUAL BACKGROUND............................................................................................2

5   LEGAL STANDARD.....................................................................................................3

6   ARGUMENT ...............................................................................................................4

7   **I.**  As a Threshold Matter, It Is Proper for The Court to Determine the Validity of Any Purported
8        Arbitration Agreement Between JustAnswer and Plaintiffs.........................................4

9   **II.** Plaintiffs and Class Members Never Agreed to JustAnswer's Terms Of Service, Containing the
10       Arbitration Agreement ............................................................................................5

11       **A.** No Arbitration Contract Was Formed Because Plaintiffs and Class Members Purchased
12           and Used JustAnswer's Services Without Viewing, Let Alone Agreeing To, The
13           Arbitration Clause ...........................................................................................6

14       **B.** JustAnswer Has Not Met Its Summary Judgment-Like Burden to Establish The Existence
15           of Valid Arbitration Agreements With Plaintiffs..................................................9

16   **III.** JustAnswer Fraudulently Misrepresented Its Payment Structure in Order to Induce Plaintiffs'
17       And Class Members' Assent......................................................................................14

18   **IV.** Plaintiffs' Claims Are Not Within the Scope of the Arbitration Clause ................................15

19   **V.** Even If Plaintiffs and Class Members Formed Agreements with JustAnswer, the Agreement Is
20       Unenforceable Because It Is Unconscionable.................................................................16

21       **A.** Procedural Unconscionability ..................................................................................16

22       **B.** Substantive Unconscionability ................................................................................18

23   CONCLUSION ...............................................................................................................21

24

25

26

1

## **TABLE OF AUTHORITIES**

2

### STATUTES

3    9 U.S.C. § 2    ...................................................................................................... 3

4    9 U.S.C. § 4    .................................................................................................... 14

5

### FEDERAL RULES OF EVIDENTIARY PROCEDURE

6    Fed. R. Evid. 803(6)    ........................................................................................ 12

7    Fed. R. Evid. 1002    .......................................................................................... 12

8

### CASE LAW

9    *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) ............................. 3

10    *Bazak Intern. Corp. v. Tarrant Apparel Grp.*, 378 F. Supp 2d 377, 389 (S.D.N.Y. 2005) ........... 6

11    *Bazemore v. Jefferson Capital Sys.*, 827 F.3d 1325 (11th Cir. 2016)........................... 4, 9, 11, 13

12    *Berkson v. Gogo LLC*, 97 F. Supp. 3d at 398 ............................................................. 7, 9, 12

13    *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002)............................... 19

14    *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850, 89 Cal.Rptr.2d 540 (1999)................. 6

15    *Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins. Col.*, 354 F. Supp. 2d 499, 503-505 (S.D.N.Y. 2005)
16    ........................................................................................................................ 15-16

17    *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir. 2014)...................................................... 3

18    *Dillon v. BMO Harris Bank, N.A.*, 173 F. Supp.3d 258, 261-262 (M.D.N.C. 2016) .................. 13

19    *Doe v. SexSearch*, 502 F. Supp. 2d 719, 729 (N.D. Ohio 2007)...................................................... 7

20    *Douglas v. United States Dist. Court for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1066 (9th Cir.
21    2007) (per curium), *cert. denied sub nom; Talk America, Inc. v. Douglas*, 552 U.S. 1242 (2008)...
22    ........................................................................................................................ 19-20

23    *Gen. Ass'n of Regular Baptist Churches v. Scott*, 2012 WL 12902791 (N.D. Ill. 2012) ............. 11

24    *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ........................................ 15

25    *Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 815 (N.D. Cal. 2021) ......16

26    *Granite Rock*, 561 U.S. 287 (2010) ............................................................................................... 5

*Grosvenor v. Qwest Commc'ns Int'l, Inc.*, No. 09-cv-2848, 2010 WL 3906253, at *7-8 (D. Colo. Sept. 30, 2010) ................................................................................................................ 12

*Haft v. Haier US Appliance Solutions, Inc.*, 2022 WL 62181 (S.D.N.Y. Jan. 5, 2011) .... 16, 18-19

*Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 365 (E.D.N.Y.2009) ...................................... 9

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003) ...................................... 21

*In re North Mandalay Inv. Group, Inc.,* 391 B.R. 890, 893 (M.D. Fla. 2008) .............................. 6

*In re Zappos.com, Inc.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).......................................... 7

*Kilgore v. KeyBank Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) ........................................ 5

*Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) .................................. 9

*Lamps Plus v. Varela,* 139 S.Ct. 1407, 1415, 203 L.Ed.2d 636 (2019).......................................... 6

*Lopez v. Terra's Kitchen*, LLC, 331 F. Supp. 3d 1092, 1097–101 (S.D. Cal. 2018) ...................9

*Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 545-46 (D. Md. 2007)................................... 11

*Louis Dreyfus Negoce S.A. v. Blysta Shipping & Trading*, 252 F.3d 218, 225 (2d Cir. 2001) .....15

*Montes v. San Joaquin Cmtycap. Hosp.*, No. 1:13-CV-01722-AWI, 2014 WL 334912 (E.D. Cal. Jan. 29, 2014) ................................................................................................................ 21

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d at 1178 (9th Cir. 2014) ...............................................7

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016)................................................. 9

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019), *cert. denied sub nom.* 141 S. Ct. 85 (U.S. 2020).. ................................................................................................................................ 16-18

*Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015)............... 10

*Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010)...................................................... 21

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967)................................ 5

*Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 57 (2d Cir. 2017), as amended (Aug. 21, 2017) ... ......................................................................................................................................19

*Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006)........................................ 15

*Schurr v. Austin Galleries of Ill.,* 719 F.2d 571, 576 (2d Cir. 1983) ............................................ 6

*Sgouros v. Transunion Corp.*, 817 F.3d at 1034-36 ............................................................... 9, 12

1   *SHEDDF2-FL3, LLC v. Penthouse S., LLC*, 314 So. 3d 403, 409 (Fla. 3d DCA 2020).............. 16

2   *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 202 (E.D.N.Y. 2010)

3   .......................................................................................................................................................... 18

4   *Sonic-Calabasas A, Inc. v. Moreno,* 57 Cal. 4th 1109, 1134 (2013) ............................................ 17

5   *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 35 (2d Cir. 2002).................................................. 9

6   *Sullivan v. All Web Leads, Inc*., No. 17 C 1307, 2017 WL 2378079 (N.D. Ill. June 1, 2017) ....... 9

7   *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991)..5

8   *Tompkins v. 23andMe, Inc.*, 2014 WL 903752 (N.D. Cal. June 25, 2014) ..................................... 9

9   *Walker v. Nautilus, Inc*., 541 F. Supp. 3d 836, 842 (S.D. Ohio 2021) .......................................... 9

10   *Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) ......................................... 16

11   *Wilson v. Playtika, Ltd*., 349 F. Supp. 3d 1028, 1038 (W.D. Wash. 2018) ................................... 9

12

1            **<u>Statement of Issues to Be Decided</u>**

2            Pursuant to the Local Rules of Practice in Civil Proceedings before the United States

3    District Court for the Northern District of California, Rule 7-4(a)(3), Plaintiffs ask the Court to

4    rule on the following issues:

5            1.      Whether Plaintiffs are required to arbitrate their claims for relief against

6    JustAnswer pursuant to its Terms of Use.

7            2.      Whether the Court must stay this proceeding pending the completion of Plaintiffs'

8    arbitration against JustAnswer.

9                                    **<u>INTRODUCTION</u>**

10           Plaintiffs Jessica Quamina, Kseniya Godun, Moya McDowell, Renee Pettit, Kristie

11   Nelson, Tasha Davis, and Latoya Foust ("Plaintiffs) used Defendant's website to submit a single

12   question to one of Defendant's "experts". Due to Defendant's misrepresentations, Plaintiffs

13   believed, , that they would only be charged a one-time fee for their single question. Defendant,

14   however, automatically enrolled them in a costlier monthly membership with recurring fees at

15   the expense of Plaintiffs. Defendant claims Plaintiffs agreed to its "Terms of Use"[1] ("TOS")when

16   Plaintiffs entered their payment information on the website and clicked a button that read, "Start

17   my trial." However, users, like the Plaintiffs, were not required to actually view the hyperlinked

18   terms of service in order to click "Start my trial" and begin using JustAnswer's service.

19           As an initial matter, the gateway issues of arbitrability must be decided by the Court

20   because the delegation provision of the TOS exempt many of these issues from its scope, is

21   exceedingly convoluted and thus fails the "clear and unmistakable" test, and is unconscionable.

22   Nonetheless, Defendant seeks to enforce its unconscionable arbitration clause found in its TOS.

---

[1] The "Terms of Use" included a class action waiver and a binding arbitration clause.

1    (*See, e.g.,* ECF 27, Ex. 1-3). Defendant had tried to make its TOS "less unconscionable" by

2    amending them on February 26, 2022, but even the new version buried the information regarding

3    automatic enrollment in a monthly membership. The arbitration clause itself is rife with procedural

4    and substantive unconscionability. With Plaintiffs identifying at least four unenforceable terms,

5    the unconscionability permeates the TOS rendering severance impossible. Thereby, the Court

6    should deem it wholly unenforceable.

7                                    **FACTUAL BACKGROUND**

8         Plaintiffs Jessica Quamina, Kseniya Godun, Moya McDowell, Renee Pettit, Kristie

9    Nelson, Tasha Davis, and Latoya Foust (collectively "Plaintiffs") filed this action on October 13,

10   2022. Dkt. 1 ("Compl" or "Complaint"). Plaintiffs allege Defendant JustAnswer LLC.

11   ("JustAnswer" or "Defendant") misled consumers into believing they would only pay a one-time

12   fee for using Defendant's website.  However, in addition to the one-time fee, Plaintiffs were also

13   automatically enrolled in a monthly membership which resulted in the Plaintiff being charged

14   approximately $46.00 each month. *Id.* ¶¶ 44-46

15        Plaintiffs assert eleven causes of action: (1) violation of the Electronic Funds Transfer Act,

16   15 U.S.C. 1693, *et. seq.*; (2) violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof.

17   Code §§ 17500, *et seq.*; (3) violation of the California Legal Remedies Act; (3) violation of the

18   California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*; (4) violation

19   of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (5) violation

20   of New York General Business Law § 349; (6) violation of N.C.G.S. § 75-41 (Bus. & Prof. Code,

21   § 17600 *et seq.* and § 17535); (7) violation of the Unfair and Deceptive Trade Practices, N.C.G.S.

22   § 75 *et. seq.*; (8) violation of the Florida Deceptive Trade Practices Act ("FDUTPA") § 501.201,

23   *et. seq.*; (9) Conversion, pursuant to § 17602, *et. seq.*; (10) Negligent Misrepresentation; and (11)

1    Unjust Enrichment. Compl. ¶¶ 150-222. Plaintiffs pursue their claims on behalf of themselves and

2    all others similarly situated as a nationwide class and on behalf of themselves and all applicable-

3    class members as state subclasses for California, New York, and Florida. *Id.,* ¶ 137.

4        On January 10, 2023, Defendant moved to compel arbitration of Plaintiffs' claims based

5    on an arbitration clause in various versions of Defendant's Terms of Use. Mot. to Compel

6    Arbitration, Dkt. 26 ("Mot."); Declaration of Pranav Nayak, Dkt. 27 ("Nayak Decl."); Declaration

7    of Randolph Gaw, Dkt. 28 ("Gaw Decl."). As described herein, Defendant's Motion should be

8    denied in full. In response, Plaintiffs submit the following allegations, supported by the following

9    attached documents: (1) Plaintiff Quamina's Declaration, **Exhibit 1**; (2) Plaintiff McDowell's

10   Declaration, **Exhibit 2**; (3) Plaintiff Nelson's Declaration, **Exhibit 3**; (4) Plaintiff Davis's

11   Declaration, **Exhibit 4**; and (5) Plaintiff Pettit's Declaration, **Exhibit 5**. For the reasons described

12   below, Defendant's Motion should be denied.

13                                    **LEGAL STANDARD**

14       In deciding whether to compel arbitration, a court must determine two "gateway" issues:

15   (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement

16   covers the dispute. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

17   The moving party bears the burden of demonstrating that these two elements are satisfied. *Id.*

18   When determining whether a valid contract to arbitrate exists, courts apply ordinary state law

19   principles that govern contract formation. *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1093 (9th Cir.

20   2014). Agreements to arbitrate may be invalidated by generally applicable contract defenses, such

21   as fraud, duress, or unconscionability. *See* 9 U.S.C. § 2. There is no dispute that California law

22   applies to the interpretation and validity of the User Agreement (and arbitration clause therein) for

23   the California Plaintiffs' claims.

1

## **ARGUMENT**

3   As the party seeking to compel arbitration, JustAnswer has the burden of establishing that

4   an agreement to arbitrate exists. Given that JustAnswer has the burden of proof, the insufficiency

5   of its proffered evidence (as discussed below) is enough to deny the motion to compel. Although

6   Plaintiffs have submitted four affidavits in support of their well-pleaded allegations,[2] Plaintiffs

7   and Class Members need not submit any evidence of their own, such as counter-declarations or

8   affidavits. *See Bazemore v. Jefferson Capital Sys*., LLC, 827 F.3d 1325, 1334 (11th Cir. 2016)

9   (finding irrelevant the fact that plaintiff "provided almost no evidentiary support for her contention

10   that she never entered into an arbitration agreement" given that "it is defendant's burden ... to

11   prove the existence and terms of the contract it wishes to enforce").

12   As shown below, each of the Plaintiffs lacked sufficient knowledge of Defendant's TOS,

13   as required by each of the Plaintiffs' respective state laws, and consequently, no valid arbitration

14   agreement was ever formed between Plaintiffs and Defendant. Consequently, JustAnswer's

15   Motion should be denied.

16   **I.    As A Threshold Matter, It Is Proper for The Court To Determine The Validity**
17   **Of Any Purported Arbitration Agreement Between JustAnswer And Plaintiffs.**
18
19   Defendant contends that any questions regarding "the validity, enforceability, or

20   applicability" of Plaintiffs' purported arbitration agreements with Defendant are for the arbitrator

21   to decide—not the Court. Mot. at p. 14. According to JustAnswer, Plaintiffs "clearly and

22   unmistakably" agreed to delegate their claims because of the following two reasons: (1) the "2022

23   TOS contains explicit, broad language delegating all gateway issues to the arbitrator", and (2) "the

---

[2] *See, e.g.* Ex. 1-4.

OPPOSITION TO DEF'S MOT.
TO COMPEL ARBITRATION
- 4 -
Case No. 3:22-CV-06051-JD

1    2022 TOS expressly incorporates JAMS arbitration rules, and the November 2020 TOS and

2    October 2018 TOS expressly incorporate the AAA arbitration rules." *Id.* at pp. 14-15. However,

3    both arguments lack merit quite simply because none of the terms from any of the 2022 TOS,

4    November 2020 TOS, and October 2018 TOS are controlling because, as set forth below, the

5    arbitration agreement, itself, is invalid. It is well-settled that it is a threshold matter for the courts

6    to determine whether a valid agreement to arbitrate exists. *See Kilgore v. KeyBank Nat. Ass'n*, 718

7    F.3d 1052, 1058 (9th Cir. 2013). If the court finds that the arbitration agreement is invalid, the

8    issue of arbitrability is moot, and the purported delegation clause is not triggered. *Three Valleys*

9    *Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140–41 (9th Cir. 1991) ("a party who

10   contests the making of a contract containing an arbitration provision cannot be compelled to

11   arbitrate the threshold issue of the *existence* of an agreement to arbitrate. Only a court can make

12   that decision.").

13       Accordingly, this Court, not an arbitrator, must first decide whether Plaintiffs' claims are

14   subject to a valid arbitration agreement. *See Granite Rock*, 561 U.S. 287 (2010) at 299–300

15   (explaining that a court must not order arbitration under circumstances where the "formation of

16   the parties' arbitration agreement . . . is in issue.").

17   **II.    Plaintiffs and Class Members Never Agreed to JustAnswer's Terms Of Service,**
18   **        Containing The Arbitration Agreement.**
19
20       In considering Defendant's Motion, the fundamental question is whether Plaintiffs ever

21   actually entered into a binding agreement with JustAnswer to arbitrate. The Federal Arbitration

22   Act ("FAA") reflects the fundamental principle that arbitration is a matter of contract. 9 U.S.C. §§

23   1–16; *see also AT&T Techs. Inc.*, 475 U.S. 643, 648 (1986) ("arbitration is a matter of contract

24   and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

25   submit"). Under section 4 of the FAA, the court is instructed to order arbitration to proceed only

1    "once it is satisfied that 'the making of the agreement for arbitration... is not in issue.'" *Prima*

2    *Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967). Thus, the court's first step is

3    to determine whether a valid agreement to arbitrate exists. *See Granite Rock Co.*, 561 U.S. at 296

4    ("It is well settled ... that whether parties have agreed to 'submi[t] a particular dispute to

5    arbitration' is typically an 'issue for judicial determination.'") (quoting *Howsam v. Dean Witter*

6    *Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). As shown below, there was not mutual assent here between

7    JustAnswer and the California Plaintiffs and non-California Plaintiffs alike. Consequently, no

8    agreement was ever formed.

9    **A.    No Arbitration Contract Was Formed Because Plaintiffs and Class Members**
10        **Purchased and Used JustAnswer's Services Without Viewing, Let Alone**
11        **Agreeing To, The Arbitration Clause**
12
13        Although federal policy generally favors arbitration and suggests that arbitration clauses

14    are liberally construed, general contract principles still apply, and before an arbitration agreement

15    can be considered, basic contract requirements must be met. In addition to the "foundational

16    [Federal Arbitration Act] principle" that "[a]rbitration is strictly a matter of consent," *Lamps Plus*

17    *v. Varela,* 139 S.Ct. 1407, 1415, 203 L.Ed.2d 636 (2019) (internal quotations omitted), California,

18    New York, and Florida all require mutual assent (i.e. a meeting of the minds) to form a valid

19    contract. *See Binder v. Aetna Life Ins. Co.,* 75 Cal. App. 4th 832, 850, 89 Cal.Rptr.2d 540 (1999);

20    *Schurr v. Austin Galleries of Ill.,* 719 F.2d 571, 576 (2d Cir. 1983) (citations omitted); *In re North*

21    *Mandalay Inv. Group, Inc.,* 391 B.R. 890, 893 (M.D. Fla. 2008). Mutual assent is a "question of

22    fact." *Bazak Intern. Corp. v. Tarrant Apparel Grp.*, 378 F. Supp 2d 377, 389 (S.D.N.Y. 2005).

23    This is where Defendant's Motion fails. Plaintiffs did not have actual notice of the arbitration

1   agreement within the Terms of Use, and as discussed below,[3] JustAnswer's sign-in "browsewrap"

2   agreement did not provide constructive notice sufficient for Plaintiffs' assent to be inferred.

3          A body of law has developed surrounding the formation of contracts through internet

4   websites. "Clickwrap" agreements are at one end of the spectrum and require that the consumer

5   check a box to confirm he or she has read a certain presented agreement, such as the terms and

6   conditions or a privacy policy. *See, e.g., Doe v. SexSearch*, 502 F. Supp. 2d 719, 729 (N.D. Ohio

7   2007). Such agreements are generally held sufficient to show assent. *See Berkson v. Gogo LLC*,

8   97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015). "Browsewrap" agreements are at the other end of the

9   internet contracting spectrum. These are agreements where the user is not required to view and

10  manifest assent to the contract – the "terms" are simply made available through a hyperlink. *See,*

11  *e.g., Berkson,* 97 F. Supp. 3d at 395 ("Browsewraps can take various forms but basically the

12  website will contain a notice that – by merely using the services of, obtaining information from,

13  or initiating applications within the website – the user is agreeing to and is bound by the site's

14  terms of service."); *Nguyen v. Barnes & Noble Inc*., 763 F.3d 1171, 1176 (9th Cir. 2014).

15         The discreet browsewrap in this case is precisely the type courts have found insufficient to

16  provide constructive notice and demonstrate assent. *See, e.g., Specht v. Netscape Comm. Corp.*,

17  306 F.3d 17, 32 (2nd Cir. 2002) (refusing to enforce an agreement whose terms were placed below

18  the "Accept" button); *In re Zappos.com, Inc*., 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) ("The

19  Terms of Use is inconspicuous, buried in the middle to bottom of every Zappos.com webpage

20  among many other links, and the website never directs a user to the Terms of Use."); *Nguyen*, 763

21  F.3d at 1178 (hyperlink in bottom left- hand corner of every page, and below some buttons on

---

[3] "I only became aware that JustAnswer LLC's Terms of Use contained an arbitration provision after filing a Class Action Complaint against Defendant." Ex. 1, ¶ 5; *see also* Ex. 2, ¶ 6 (same); Ex. 3, ¶ 6 (same); Ex. 4, ¶ 7 (same).

1   other pages, insufficient); *Lopez v. Terra's Kitchen*, LLC, 331 F. Supp. 3d 1092, 1097–101 (S.D.

2   Cal. 2018) (hyperlink in bottom left-hand corner below 21 other hyperlinks, in same font and color

3   as other links, insufficient even where link also appears on order summary page below the "place

4   order" button); *Sgouros v. TransUnion Corp*., No. 14 C 1850, 2015 WL 507584, at **6-7 (N.D.

5   Ill. Feb. 5, 2015) (similar).

6       In *Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 35 (2d Cir. 2002), the Second Circuit

7   found unenforceable an arbitration agreement buried in a browsewrap agreement (like the one

8   JustAnswer has here) finding the consumer had no notice of the terms and conditions. In *Hines*,

9   the Second Circuit was again faced with the issue of a browsewrap agreement between a consumer

10   and an online retailer. *Hines v. Overstock.com, Inc*., 668 F.Supp.2d 362, 365 (E.D.N.Y.2009),

11   *aff'd,* 380 Fed. Appx. at 25. Yet again, the Second Circuit found the arbitration clause buried in

12   the browsewrap agreement was not binding because the consumer had no notice of the terms and

13   conditions and was never presented with them. *Id*. at 367. Following the Second Circuit's rulings

14   in *Specht* and *Hines*, "courts generally have enforced browsewrap terms only against

15   knowledgeable accessors, such as corporations, not against individuals." *Berkson*, 97 F. Supp. 3d

16   at 396. *See also Walker v. Nautilus, Inc*., 541 F. Supp. 3d 836, 842 (S.D. Ohio 2021) ("the Court

17   finds that Walker did not assent to the browsewrap terms of use, including the arbitration provision,

18   hyperlinked to the Bowflex website.)

19       JustAnswer's purported arbitration agreement falls squarely within the Second Circuit case

20   law holding that arbitration clauses in browsewrap agreements are unenforceable against

21   individuals. In face of this on point, JustAnswer still seeks to enforce the arbitration agreement

22   that was admittedly only disclosed by a hyperlink visible during part of the registration stage. Mot.

23   at 1. Even viewing Defendant's argument in the most favorable light, at most, Defendant has

1  established that the arbitration clause, found within JustAnswer's Terms of Use, is available only

2  through an inconspicuous hyperlink. Defendant has not met its summary judgment-like burden to

3  show that Plaintiffs were presented with the arbitration agreement and manifested assent.

4  Accordingly, the Court cannot enforce that arbitration provision in this case. *See Wilson v.*

5  *Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1038 (W.D. Wash. 2018) (browsewrap did not bind consumer

6  to Terms of Use); *see also Tompkins v. 23andMe, Inc.*, No. 5:13-cv-05682, 2014 WL 903752, at

7  *6-7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (same); *Sullivan v. All Web*

8  *Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *9 (N.D. Ill. June 1, 2017) (similar).

9  **B.      JustAnswer Has Not Met Its Summary Judgment-Like Burden to Establish**
10  **The Existence of Valid Arbitration Agreements With Plaintiffs.**
11
12          As the party seeking to compel arbitration, Defendant has the burden of establishing that

13  an agreement to arbitrate exists *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 700 (S.D.N.Y.

14  2017). The summary judgment standard requires a court to "consider all relevant, admissible

15  evidence submitted by the parties and contained in pleadings, depositions, answers to

16  interrogatories, and admissions on file, together with ... affidavits." *Nicosia v. Amazon.com, Inc.*,

17  834 F.3d 220, 229 (2d Cir. 2016) (internal citations omitted). In doing so, the court must draw all

18  reasonable inferences in favor of the non-moving party. *Id.*

19          Given that Defendant has the burden of proof, the insufficiency of their proffered evidence

20  (as discussed below) is enough to deny the motion to compel. Although they have in this matter,[4]

21  Plaintiffs and Class Members need not submit any evidence of their own, such as counter-

22  declarations or affidavits. *See Bazemore v. Jefferson Capital Sys.*, LLC, 827 F.3d 1325, 1334 (11th

23  Cir. 2016) (finding irrelevant the fact that Plaintiff "provided almost no evidentiary support for her

---

[4] *See, e.g.,* Ex. 1-4.

1    contention that she never entered into an arbitration agreement" given that "it is defendant's burden

2    ... to prove the existence and terms of the contract it wishes to enforce"). Defendant has not

3    produced any written document signed by Plaintiffs. Nor has Defendant produced an electronic

4    record showing that Plaintiffs and Class Members agreed to an arbitration clause online. All that

5    Defendant has provided to this Court is purported copies of JustAnswer's operative Terms of Use,

6    the Terms of Use that were in effect between November 2020 through February 2022, the Terms

7    of Use that were in effect between October 2018 and March 2020, and Ms. Nayak's declaration,

8    claiming that Plaintiffs supposedly created a JustAnswer Account. Nayak Decl. Ex. 1-3; Gaw Decl.

9    Ex. 1-3. That is not even close to sufficient to meet Defendant's high evidentiary burden.

10        First, Mr. Nayak's declaration fails to lay a proper foundation for introduction of the Terms

11    of Use she attaches. "District courts routinely consider agreements containing arbitration

12    provisions ... but only if the proponent of arbitration properly authenticates the document

13    containing an arbitration provision[.]" *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d

14    1070, 1073 (N.D. Ill. 2015). To authenticate a document, "the proponent must produce evidence

15    sufficient to support a finding that the [document] is what the proponent claims it is. Fed. R. Evid.

16    901(a)." *Id.* While such evidence can be in the form of witness testimony, Fed. R. Evid. 901(b)(1),

17    all that Ms. Nayak's declaration contains on that score is the conclusory assertion, without laying

18    any foundation to establish its reliability, that these Terms of Use were "in effect for all of the

19    Plaintiffs" when they signed up for JustAnswer. Nayak Declr. ¶ 51. In fact, Ms. Nayak's

20    declaration did not even attach a signed agreement by any of the Plaintiffs—instead, JustAnswer

21    merely provided a declaration claiming the agreement was signed. *Id.* Ms. Nayak's declaration is

22    further insufficient in that she did not establish a foundation of personal knowledge regarding

23    Plaintiffs signing agreements. Ms. Nayak's word cannot and should not be taken at face value,

1   given the robust burden Defendant must meet at this stage of litigation. *See Gen. Ass'n of Regular*

2   *Baptist Churches v. Scott*, No. 12 C 1859, 2012 WL 12902791, at *1 (N.D. Ill. 2012). In sum, Ms.

3   Nayak's declaration simply does not lay a proper foundation to establish that each exhibit is what

4   he says it is. *See Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 545-46 (D. Md. 2007) ("It is

5   necessary ... that the authenticating witness provide factual specificity about the process by which

6   the electronically stored information is created, acquired, maintained, and preserved without

7   alteration or change, or the process by which it is produced if the result of a system or process that

8   does so, as opposed to boilerplate, conclusory statements[.]").

9          Second, even if the exhibits are faithful reproductions of the user agreements at various

10  points in time, Ms. Nayak's declaration states merely that "would have seen" its attached

11  screenshots on the first page of the webpage displayed on their phone or personal computer when

12  first using JustAnswer's services. Nayak Decl. ¶¶ 15-37. But pointing to an unsigned example

13  form contract and asserting that a party would have had to agree to it in no way establishes that

14  the party actually did agree to it. In *Gen. Ass'n of Regular Baptist Churches*, for example, a

15  defendant tried to compel arbitration by pointing to exactly what Defendant points to here: a copy

16  of a sample form agreement containing an arbitration clause and a declaration that the plaintiff

17  "would have had to have signed it." 2012 WL 12902791, at *1. There, the Court found such

18  evidence insufficient to establish that the plaintiff had agreed to arbitrate their claims, and therefore

19  denied the motion to compel arbitration. *Id.*, at *2. Agreeing that a declaration that a plaintiff

20  "would have had to sign" an arbitration agreement is insufficient, the Seventh Circuit affirmed.

21  549 Fed. App'x 531, 533-34 (7th Cir. 2013). *See also Bazemore*, 827 F. 3d at 1328, 1331 (refusing

22  to compel arbitration based on declaration that, pursuant to bank's regular and ordinary practice,

23  an arbitration agreement "would have been sent" to plaintiff). While Ms. Nayak's declaration

1    makes the conclusory statements that "my team and I have been able to determine" that Plaintiffs

2    signed up for JustAnswer on various dates, Nayak Decl. ¶¶ 38-40, that testimony is both hearsay

3    and violates the best evidence rule. She fails to explain the basis of his personal knowledge of

4    JustAnswer's agreements with Plaintiffs and further why production of those unidentified records

5    is not required to prove their consent, *see* Fed. R. Evid. 1002. In addition, Ms. Nayak's declaration

6    fails to establish any hearsay exception under which such unidentified records might fall, *see, e.g.*,

7    Fed. R. Evid. 803(6).[5]

8           Third, even if evidence that a user "would have seen"—rather than "did—agree to

9    arbitration were sufficient, whether someone has manifested assent to terms during an online

10   transaction depends on factors like what was visible to the user on their computer or mobile screen

11   at the time and whether further action was necessary by the user (such as scrolling or following a

12   hyperlink). *Sgouros*, 817 F.3d at 1034-36. As courts makes clear, differences in how a website

13   appeared to a user—differences in check boxes, click buttons, scroll windows, and hyperlinks—

14   can be dispositive. *Id.*; *see also Berkson*, 97 F. Supp. 3d at 398 ("There is a crucial distinction

15   between online agreements that a user must view because of the nature of the website's

16   construction and design—i.e., scrollwraps—and those that merely require a user to click an 'I

17   agree' box that appears next to a hyperlink containing 'terms of use'—i.e., clickwraps.");

18   *Grosvenor v. Qwest Commc'ns Int'l, Inc.*, No. 09-cv-2848, 2010 WL 3906253, at *7-8 (D. Colo.

19   Sept. 30, 2010) (recognizing that whether terms are presented on the same page as acceptance

20   button matters).

---

[5] To be clear, the issue here is not whether Plaintiffs and Class Members created JustAnswer accounts, but rather whether they assented to or are otherwise bound by the various Terms of Use attached to Ms. Nayak's declaration.

1    Other courts have denied motions to compel arbitration supported by evidence similarly

2   deficient to what Defendant proffers here. In *Dillon v. BMO Harris Bank, N.A.,* the defendant had

3   moved to compel arbitration based on an electronic document to which the plaintiff had

4   purportedly agreed when applying for a loan online. 173 F. Supp.3d 258, 261-262 (M.D.N.C.

5   2016). As here, the proffered agreement "[d]id not contain [plaintiff's] physical signature nor any

6   specific indication that [plaintiff] agreed to the arbitration process. *Id.* at 264. While a declaration

7   submitted with the document asserts that Plaintiffs assented to JustAnswer's various Terms of Use

8   on various dates, " the declarant "[d]id not explain how the electronic document purporting to

9   memorialize the [] agreement was created", "[could not] affirm that the document presented to the

10  Court was presented to [plaintiff] in the same format," and "[was] silent about how [the defendant]

11  maintained its electronic records or ensured that [user agreements] were preserved without

12  alteration or change." *Id.* at 256-66. Expressing "an unwillingness to rely on purported contract

13  merely because a copy exists in an electronic file," *id.* at 267, the Court explained that:

14          These are not abstract, unimportant concerns. Click-wrap contracts like the one at issue
15          here pose special risks of fraud and error. When one of the contracting parties has exclusive
16          control of the electronic record, which is the case in many consumer online transactions,
17          that party is in a position to produce a document that meets its current preferences and
18          needs. Even absent fraud, there is a risk of error in the production of a document from the
19          bowels of an electronic record- keeping system, which may include agreements whose
20          terms and electronic click- through procedures varied over time.

21  *Id.* at 266. Finding the proffered evidence insufficient, the court held that it was not satisfied that

22  the parties had agreed to arbitrate. *Id.* at 269. *See also Bazemore*, 827 F.3d at 1330-31 (refusing to

23  compel arbitration based on "woefully inadequate" declaration that Plaintiffs had "accepted the

24  terms governing her account," given that declarant "does not explain how he knows this, nor does

25  he substantiate the claim with documentary proof").

1    Here, Ms. Nayak's declaration fails to describe how the exhibits purporting to be the

2    operative and prior versions of the Terms of Use were generated and fails to affirm that the exhibits

3    were presented to Plaintiffs and Class Members in the same format. Defendant's lackluster

4    evidentiary showing does not meet their burden of establishing the existence of an arbitration

5    agreement between themselves and Plaintiffs as well as Class Members, and should not "satisf[y]"

6    this Court "that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4.

7    **III.    JustAnswer Fraudulently Misrepresented Its Payment Structure in Order to**
8    **Induce Plaintiffs' And Class Members' Assent.**

9    JustAnswer's arbitration agreement is invalid because any purported acceptances by

10    Plaintiffs were fraudulently induced by JustAnswer through its repeated misrepresentations and

11    omissions. Prior to forming any purported agreement, JustAnswer represented to Plaintiffs and

12    Class Members that, for submitting a single question to one of JustAnswer's experts, they would

13    be charged a one-time fee of $5, but instead JustAnswer automatically enrolled them in a costlier

14    monthly membership. Compl. ¶ 9. Every statement JustAnswer made to Plaintiffs and Class

15    Members about its payment structure was false.[6] Prior to opening their accounts with JustAnswer,

16    Plaintiffs viewed and relied upon these statements alleged above and detailed in Plaintiffs'

17    complaint against JustAnswer, and the statements were distinctly separate from the arbitration

18    clause. These statements and omissions were essential elements of the Agreement, and Plaintiffs

19    would not have opened accounts with JustAnswer if they knew that its payment structure was

20    exponentially more expensive than one-time fee that was advertised.

21    All of these material facts demonstrate that Plaintiffs' purported acceptance of the

22    Agreement is invalid because any purported agreement they entered into was based upon a

---

[6] *See* Ex. 1, ¶¶ 3-4; Ex. 2, ¶¶ 3-4; Ex. 3, ¶¶ 3-4; Ex. 4, ¶¶ 4-5.

OPPOSITION TO DEF'S MOT.                                    Case No. 3:22-CV-06051-JD
TO COMPEL ARBITRATION                    - 14 -

1   misrepresentation and/or omission of material facts regarding the JustAnswer's payment structure.

2   *See Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006) ("[I]f the claim is fraud

3   in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the

4   agreement to arbitrate—the federal court may proceed to adjudicate it.")

5   **IV.     Plaintiffs' Claims Are Not Within the Scope of the Arbitration Clause.**
6

7          "No fixed rules govern the determination of an arbitration clause's scope." *Louis Dreyfus*

8   *Negoce S.A. v. Blysta Shipping & Trading*, 252 F.3d 218, 225 (2d Cir. 2001). Rather, "the scope

9   of an arbitration clause. . . is a question of intent of the parties." *Id*. at 225. Moreover, arbitration

10  clauses "limited to disputes 'under' or 'arising under' the agreement without more expansive

11  language are normally found to be narrow." *See Bristol-Myers Squibb Co. v. SR Int'l Bus. Ins.*

12  *Col.,* 354 F. Supp. 2d 499, 503-505 (S.D.N.Y. 2005).

13         JustAnswer's purported Terms of Use provide that "If your dispute with JustAnswer is

14  made in your capacity as User who is not using the Platform in your capacity as an Expert, then

15  the following dispute resolution provisions apply." Nayak Decl., Ex. 1. Plaintiffs' disputes arise

16  from their capacities as "Users", which the Terms of Use define as "the individual or entity that

17  uses the websites, applications, and other offerings from JustAnswer". *Id*. Accordingly,

18  JustAnswer's arbitration clause is narrow. Under a narrow arbitration clause, a dispute will only

19  be subject to arbitration if "the dispute is an issue that is on its face within the purview of the

20  clause," and further, "a collateral matter will generally be ruled beyond its purview." *Louis Dreyfus*

21  *S.A.*, 252 F.3d at 225 (internal quotations and citations omitted).

22         "In determining whether a particular claim falls within the scope of the parties' arbitration

23  agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of

24  action asserted." *Genesco, Inc. v. T. Kakiuchi & Co*., 815 F.2d 840, 846 (2d Cir. 1987). Generally,

1  a dispute will be found to arise under an agreement where the dispute goes to the "interpretation

2  of the contract and matters of performance." *Bristol–Myers Squibb*, 354 F.Supp.2d at 506 (quoting

3  *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir.1961)). Here, there is no question this dispute is

4  not from the "interpretation of the contract and matters of performance." The contract is for expert

5  advice services. This dispute involves JustAnswer misrepresenting their payment structure and

6  service charges, which as a result damaged Plaintiffs and Class Members. No reasonable person

7  would think that agreeing to terms and service necessary to obtain expert advice services would

8  obligate them to arbitrate disputes related to being charged exponentially to what they expected

9  and agreed to. *See e.g. Wexler v. AT & T Corp.*, 211 F. Supp. 3d 500, 504 (E.D.N.Y. 2016) ("no

10 reasonable person would think that checking a box accepting the "terms and conditions" necessary

11 to obtain cell phone service would obligate them to arbitrate literally every possible dispute he or

12 she might have with the service provider"). Accordingly, the Court should find that this dispute

13 does not fall under the arbitration clause and should deny Defendant's motion.

14   **V.     Even if Plaintiffs and Class Members formed agreements with JustAnswer, the**
15   **agreement is unenforceable because it is unconscionable.**
16

17 California, New York, and Florida courts all typically require procedural and substantive

18 unconscionability in order to find a contractual provision unenforceable. *Golden Gate Way, LLC*

19 *v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 815 (N.D. Cal. 2021); *Haft v. Haier US Appliance*

20 *Solutions, Inc.*, 2022 WL 62181 at *7 (S.D.N.Y. Jan. 5, 2011); *SHEDDF2-FL3, LLC v. Penthouse*

21 *S., LLC*, 314 So. 3d 403, 409 (Fla. 3d DCA 2020). Both of which exist here.

22   **A.     Procedural Unconscionability**

23 "A procedural unconscionability analysis 'begins with an inquiry into whether the contract

24 is one of adhesion.'" *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019), *cert. denied sub nom.* 141

25 S. Ct. 85 (U.S. 2020) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th

83, 93 (2000)). In this case, the supposedly binding arbitration agreement is found within an agreement presented to Plaintiffs and other users without any ability to change them or negotiate them—a classic contract of adhesion. As such, it is procedurally unconscionable. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (quoting *Ting v. AT&T,* 319 F.3d 1126, 1148 (9th Cir. 2003)) ("contract is procedurally unconscionable under California law if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'"); *Sonic-Calabasas A, Inc. v. Moreno,* 57 Cal. 4th 1109, 1134 (2013) (finding procedural unconscionability based solely on the fact that arbitration agreement was found in a contract of adhesion). Moreover, procedural unconscionability considers "whether there has been a lack of meaningful choice" by to accept a challenged provision. *Id*. at *7. To do so, Courts consider the following factors: "(1) the size and commercial setting of the transaction; (2) whether there was a 'lack of meaningful choice' by the party claiming unconscionability (3) the 'experience and education of the party claiming unconscionability and (4) whether there was 'disparity in bargaining power." *Id*. at *7. (Internal quotations and citations omitted).

Here, these factors all support a finding of procedural unconscionability. Plaintiffs and Class Members purchased and used JustAnswer's services without any knowledge regarding the arbitration agreement,[7] and then Plaintiffs and Class Members provided payments to use JustAnswer's services, expecting said payments to only be one-time charges but instead were recurring.[8] These transactions occurred on a large, commercial scale. Additionally, JustAnswer only disclosed the arbitration agreement through an discreetly hyperlinked Terms of Use—far

---

[7] *See* Ex. 1, ¶ 5; Ex. 2, ¶ 6; Ex. 3, ¶ 6; Ex. 4, ¶ 7.
[8] *See* Compl., ¶ 14.

1   from conspicuously disclosing JustAnswer's arbitration terms.[9] Plaintiffs and Class Members had

2   no meaningful choice because they had to accept the Terms of Use prior to using JustAnswer's

3   services. The "disparity in bargaining power" is further demonstrated by the fact that Plaintiffs and

4   Class Members had absolutely no agency over the terms with JustAnswer, and JustAnswer's

5   unilateral authority to amend the terms at any time, as it did so here. Compl. ¶ 29.

6       Accordingly, JustAnswer's process of getting users to "accept" the arbitration clause

7   through hiding the clause in its Terms of Use is procedurally unconscionable under California,

8   New York, and Florida law alike. Defendant's Motion fails.

9       **B.    Substantive Unconscionability**

10      The procedural unconscionability of the User Agreement is compounded by its substantive

11  unconscionability. "Substantive unconscionability pertains to the fairness of an agreement's actual

12  terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C.*, 8 Cal. 5th

13  at 125.  "Substantive terms that, in the abstract, might not support an unconscionability finding

14  take on greater weight when Thus, substantive unconscionability requires "an analysis 'of the

15  substance of the bargain to determine whether the terms were unreasonably favorable to the party

16  against whom unconscionability is urged.' " *Shema Kolainu-Hear Our Voices v. ProviderSoft,*

17  *LLC*, 832 F. Supp. 2d 194, 202 (E.D.N.Y. 2010) (internal quotations and citations omitted). To

18  determine whether substantive unconscionability exists, courts ask whether there are "contractual

19  terms that are unreasonably or grossly favorable to one side and to which the disfavored party does

20  not assent." *Haft*, 2022 WL 62181 at *7 (internal quotations and citations omitted). Courts access

21  this by applying a "sliding scale" where "the more questionable the meaningfulness of choice, the

22  less imbalance in a contract's terms should be tolerated and vice versa." *Shema*, 832 F. Supp. 2d

---

[9] *See* Ex. 1, ¶ 7; Ex. 2, ¶ 8; Ex. 3, ¶ 8; Ex. 4, ¶ 9.

1   at 201 (quoting *State v. Wolowitz*, 96 A.D.2d 47, 468 N.Y.S.2d 131, 145 (2d Dep't 1983)). In other

2   words, "where the procedural unconscionability is very high, a lesser degree of substantive

3   unconscionability be required." *Haft*, 2022 WL 62181 at *7 (internal quotations and citations

4   omitted).

5       For one, JustAnswer's Terms of Use is substantively unconscionability due to its non-

6   mutuality. Critically, the Terms of Use provide JustAnswer with the unilateral right to amend or

7   modify the Agreement at its direction, as JustAnswer has already done. Compl. ¶ 29. When a

8   provision of an agreement permits a company to unilaterally amend or terminate the agreement,

9   even with written notice, that provision is substantively unconscionable. *See Brennan v. Bally*

10  *Total Fitness*, 198 F. Supp. 2d 377, 384 (S.D.N.Y. 2002) (Court found the agreement was

11  substantively unconscionable because "its terms allow [Defendant] to unilaterally modify the

12  contract at any time") *see also Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 57 (2d Cir. 2017),

13  as amended (Aug. 21, 2017) (("[F]undamental to the establishment of a contract modification is

14  proof of each element requisite to the formulation of a contract, including mutual assent to its

15  terms."); *Douglas v. United States Dist. Court for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1066 (9th

16  Cir. 2007) (per curium), *cert. denied sub nom; Talk America, Inc. v. Douglas*, 552 U.S. 1242

17  (2008) ("a party can't unilaterally change the terms of a contract; it must obtain the other party's

18  consent before doing so."). In *Douglas*, the Plaintiffs "could only have become aware of the new

19  terms if he had visited [the company's] website and examined the contract for possible changes."

20  *Id*. However, the Court wrote, "[e]ven if Douglas had visited the website, he would have had no

21  reason to look at the contract posted there. Parties to a contract have no obligation to check the

22  terms on a periodic basis to learn whether they have been changed by the other side." *Id*. The Court

23  further noted:

1     Nor would a party know when to check the website for possible changes to the contract
2     terms without being notified that the contract has been changed and how. Douglas would
3     have had to check the contract every day for possible changes. Without notice, an
4     examination would be fairly cumbersome, as Douglas would have had to compare every
5     word of the posted contract with his existing contract in order to detect whether it had
6     changed.

7     *Id*. at 1066 n.1. When, as here, a provision of an agreement permits a company to

8     unilaterally amend or terminate the agreement, even with written notice, that provision is

9     substantively unconscionable. *See, e.g., Ingle v. Circuit City Stores, Inc*., 328 F.3d 1165, 1179 (9th

10     Cir. 2003); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) ("In addition, those rules

11     were subject to unilateral amendment by Quixtar at any time. Thus, Plaintiffs were not even given

12     a fair opportunity to review the full nature and extent of the non-binding conciliation and binding

13     arbitration processes to which they would be bound before they signed up to receive an answer

14     from one of JustAnswer's experts. These problems multiply the degree of procedural

15     unconscionability of the Terms of Use. *See Montes v. San Joaquin Cmtycap. Hosp.*, No. 1:13-CV-

16     01722-AWI, 2014 WL 334912, at *14 (E.D. Cal. Jan. 29, 2014) (finding defendant's right of

17     unilateral amendment of employment policies including arbitration agreement substantively

18     unconscionable when the right to modify "fails to put any limits on how or why this would

19     occur."). Accordingly, Plaintiffs and Class Members were not even given a fair opportunity to

20     review the full nature and extent of the agreements, including the arbitration processes, to which

21     they would be signed up for JustAnswer accounts.

22     As noted above, there is procedural unconscionability present in JustAnswer's Terms of

23     Use by the virtue of the fact that it is a one-sided adhesion contract drafted by one party that had

24     all the bargaining power. The additional substantive unconscionability lies in the arbitration

25     clause's terms and JustAnswer's ability to unilaterally amend the terms. Even if the entire Terms

26     of Use are not rendered unconscionable, the arbitration clause—with the Defendants' ability to

1  unilaterally amend with no requirement of acknowledgment by users—is clearly unconscionable

2  and cannot be enforced against Plaintiffs.

3  <u>**CONCLUSION**</u>

4

5  For all the reasons stated herein, the Court should deny Defendant's Motion.

6

7

8  Dated: February 10, 2023.                          Respectfully Submitted,

9

10                                                  s/ *John J. Nelson*
11                                                  John J. Nelson (SBN 317598)
12                                                  MILBERG COLEMAN BRYSON
13                                                  PHILLIPS GROSSMAN, PLLC
14                                                  280 South Beverly Drive
15                                                  Beverly Hills, California 90212
16                                                  Tel.: (858) 209-6941
17                                                  jnelson@milberg.com
18
19                                                  Scott C. Harris (admitted *pro hac vice*)
20                                                  MILBERG COLEMAN BRYSON
21                                                  PHILLIPS GROSSMAN, PLLC
22                                                  900 W. Morgan Street
23                                                  Raleigh, NC 27603
24                                                  Tel.: (919) 600-5003
25                                                  sharris@milberg.com
26
27                                                  *Attorney for Plaintiffs and the Class*